COUNTY OF OLMSTED *vs.* LLOYD BARBER.

COUNTY OF OLMSTED *vs.* E. T. SEDGWICK.

## November 28, 1883.

**Taxes—Delinquent List filed with Clerk—Effect as Evidence—What Taxes may be inserted.**—In proceedings to enforce payment of taxes against real estate under Gen. St. 1878, c. 11, the list filed with the clerk is, not only as to the taxes become delinquent in the current year, but as to all authorized to be placed upon it, *prima facie* evidence of the validity of the tax; but where there are on it taxes for prior years, the facts authorizing their insertion in the list must be proved. In the cases provided for in section 97 of the chapter, as amended, (Laws 1881, c. 10, § 19,) the tax for any prior year may be inserted in the list, though there be no tax becoming delinquent in the current year.

**Same—Rights of Land-owner.**—An owner may pay the tax for the current year, and contest any claimed for prior years.

**Same—Judgment between Parties avoiding Tax, not Evidence against State.**—A judgment in an action between an owner and the holder of a certificate of sale for taxes, involving the validity of the tax and the sale, is not in these proceedings evidence against the state of the facts on which it is based, but only of its existence.

**Same—Taxes not Enforced or Ascertained, how Collected in after Years.**—Every piece of property (not exempted) owes to the state its proportionate share of the amount necessary to be raised by taxation for the expenses of the government. If not enforced or even not ascertained for any year, it may be ascertained and enforced subsequently. If the right and opportunity are afforded the owner to show the amount to be partial, unfair, or unequal, the law may direct it to be fixed, *prima facie,* by taking the amount appearing to be extended against the property for the year on the books of the county treasurer or auditor, even although there was no valid assessment.

**Same—Indorsement on Deed "Taxes paid."**—The indorsement by the county auditor, on a conveyance of real estate, of "taxes paid," does not estop the state to claim that there are taxes unpaid.

**Same—Costs.**—In tax cases certified under Gen. St. 1878, c. 11, § 80, no costs are allowed.

In proceedings in the district court for Olmsted county, to enforce payment of delinquent taxes on real estate in that county, the respondents Barber and Sedgwick each appeared and interposed his answer as to certain land owned by him. The issues thus made were tried by *Buckham*, J., (acting for the judge of the 3rd district,) who ordered judgment for defendant in each case, and then, on request of the county attorney, certified to this court these questions: (1) "Are the findings and order justified by the evidence? (2) Was the judgment-roll," (in the suit of *Barber* v. *Evans*,) "properly received in evidence?" The defences made and evidence introduced are stated in the opinion.

*Frank B. Kellogg,* for appellant.

*Lloyd Barber,* for respondents, argued, *inter alia,* that this is not a case of re-assessment or re-levy of taxes once adjudged void. There is nothing of that kind here. If the tax was void by reason of the property not having been assessed, or because the tax was levied without any authority, it cannot be enforced, and it makes no difference that the taxes were not partially, unfairly, or unequally assessed. *Barber* v. *Evans,* 27 Minn. 92; *Com'rs of St. Louis County* v. *Nettleton,* 22 Minn. 356.

GILFILLAN, C. J. In the list of delinquent taxes filed with the clerk of the district court, Olmsted county, June 13, 1883, was a tract of the defendant Barber, and also tracts of the defendant Sedgwick, and opposite each was stated the amount of tax and penalty for the year 1881. Opposite Barber's was also stated an amount for the tax and interest for the years 1871 and 1872, and opposite Sedgwick's an amount for the tax and interest for the year 1871. In the proceedings to enforce the payment of taxes against real estate, the list so filed is *prima facie* evidence that all the provisions of law in relation to the assessment and levy of the taxes appearing thereon have been complied with. Gen. St. 1878, c. 11, § 79. This is so not only for the taxes becoming delinquent June 1st preceding the filing of the list, but for the taxes becoming delinquent in any prior year, when they are required by law to be inserted in the list. The statute requires such prior taxes to be, in certain cases, inserted in the list, and

v.31—17

makes no rule in respect to the effect of the list as evidence as to them differing from that as to the taxes becoming delinquent in the current year.

The rule is general, applicable to all the taxes authorized to be placed upon, and placed upon, the list; and being only a rule of evidence, merely shifting the *onus* of proof, the legislature might apply it as well to past as to future taxes. But the cases in which taxes delinquent in prior years are required to be entered on the list being exceptional, and the authority to enter them depending on exceptional circumstances, such authority must be shown by the state as a part of its case. Those facts being shown, the case of the state is *prima facie* made out, and an owner resisting enforcement of the taxes must then make out his defence to them, either in whole or in part, which he may do by showing that there was no authority to levy them, or that the land is exempt, or the taxes have been paid, or that the special facts authorizing their insertion in the list did not exist, or any omissions prior to the filing of the list resulting to his prejudice.

In the case of Barber, he alleges as defences that he has paid the tax for the year 1881; that the land was not assessed by any person for the year 1870 or 1871, and no taxes were levied or assessed on it for the year 1871 or 1872; that, June 15, 1872, the state assigned to one Elder its lien for the taxes, and also assigned to him its lien for taxes, June 15, 1873—the liens so assigned being for the identical taxes for 1871 and 1872 entered in the list; that Elder assigned the liens to Arbuckle and Arbuckle to one John Evans; and that afterwards, in an action by Barber against Evans, in which the latter sought to have the taxes adjudged a lien on the land, it was decreed that the taxes were void and not a lien; and he claims that the questions litigated in that action cannot be litigated in these proceedings.

Sedgwick makes the same defences as Barber, and this in addition: That in 1880 he purchased the real estate of which he is owner from Barber; that upon the deed from Barber the auditor of the county, on its being presented to him for his indorsement, indorsed "taxes paid and transfer entered;" and that he, Sedgwick, purchased the land relying on that certificate.

On the trials the state proved that the tax sales for the prior years mentioned in the list were declared void, set aside, and annulled by the judgment of the district court of the county, and that the money paid by the holder of the certificate of sale, upon taking the assignment to him, was, August 1, 1881, returned to him out of the county treasury on the order of the county auditor, and the alleged taxes, as originally extended on the tax duplicate books, with accruing interest, penalties, and costs, entered in the delinquent list for 1881 with the taxes for that year.

The defendants proved that, before becoming delinquent, the tax in the list for 1881 was duly tendered to the treasurer of the county, and they paid this tax into court. They also introduced in evidence the judgment and judgment-roll, set up in the answers, and the defendant Sedgwick introduced in evidence the deed from Barber and the indorsement of the county auditor, alleged in his answer. These items of evidence were duly objected to by the plaintiff, and the decision of the court admitting them duly excepted to.

The defendants insist that there was no authority to insert in the list the taxes for the years 1871 and 1872, because, as they argue, the tender of the tax for 1881 was equivalent to payment, and consequently it did not become delinquent, and that only where there are taxes becoming delinquent for the current year, may the auditor add taxes for prior years, refunded because of the tax sale having been declared void.

Gen. St. 1878, *c.* 11, § 97, as amended by Laws 1881, *c.* 10, § 19, reads: "When any tax sale is declared void by judgment of court, such judgment shall state for what reason such sale is annulled; and in all cases where any sale has been, or hereafter shall be, so set aside, the money paid by the purchaser at the sale, or by the assignee of the state on taking the assignment certificate, and all subsequent taxes, penalties, and costs that may have been paid thereon, shall, with interest at the rate of ten per cent. per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor. Such proceedings shall not operate as a payment or cancellation of any tax included in the judgment or refundment,

but the same shall stand as originally extended against the property, and, with all accruing penalties, interest, and costs, be included with the taxes thereon for the current year in the next delinquent tax sale." The taxes so refunded are to be included in the delinquent list for the current year; but if there are no taxes for the current year in that list on the property, with which the refunded taxes may be included, what then? Adopt a narrow and literal interpretation, and the refunded taxes could not be included in the list. But, if it can be avoided, an interpretation is not to be put upon a statute which will defeat, or put it in the power of any person to defeat, its manifest purpose. The manifest purpose of this statute is to do justice to the purchaser at the void tax sale, or the assignee, and, by enforcing the tax against the property, to do justice also to the state. Adopt the interpretation contended for, and the owner could always, by keeping his subsequent taxes paid, prevent the state enforcing the refunded tax. It is impossible to suppose that the legislature intended that the right and power of the state to enforce the tax should depend to any extent on the action of the owner of the property; in effect, on his consent. We conclude, therefore, that it is immaterial that, in the delinquent list for the current year, there are or are not delinquent taxes against the property. The right and power of the state to collect the tax, and the duty of the auditor to institute the proceedings for that purpose, are the same. These refunded taxes were rightly included in the list.

On the argument there was some discussion as to the right of defendants to pay the tax of 1881, without at the same time paying the other. There can be no doubt of that right. An owner of property may always pay the taxes for any year, and contest those claimed to be against it for other years.

The defendants claim that the judgment in *Barber* v. *Evans*, 27 Minn. 92, conclusively shows that the taxes for the years 1871 and 1872 were void. If the judgment conclusively bound the state as to the existence of the facts on which it was rendered, still that is not enough for these cases; for the question in that case was whether the taxes were valid under the law under which the sales were made. As the law then stood, almost any omission or irregularity in the as-

sessment or levy rendered the tax, and all proceedings to enforce it, void. But under the law now in force for enforcing payment of taxes, and under which these proceedings were brought, no omission of anything required to be done before the filing of the list with the clerk is material, unless the party objecting was prejudiced thereby, and the taxes against the land were partially, unfairly, or unequally assessed, and then only to the extent to which the tax is greater than it ought to be.

Every piece of property (not exempted) owes to the state its pro- portionate share of the amount necessary to be raised by taxation for the expenses of the government. Although for any cause the pro- portionate share for any one year of any piece of property may not be enforced, or even ascertained, the debt remains, and it may be ascertained and enforced in any subsequent year; and the owner cannot object to any particular mode adopted by the state for ascer- taining such share, and enforcing payment of it, unless such mode operate unequally or unjustly. So that, if the taxes for 1871 and 1872 were void, the land was not for that reason discharged of its debt to the state, and it might be subsequently enforced; and if its amount was not legally ascertained under the law as it then stood, there is no reason why the amount might not be directed to be ascer- tained and fixed, *prima facie,* by taking the amount appearing against the property in the books of the treasurer or auditor; the right and opportunity to the owner to show such amount to be partial, unfair, or unequal, being preserved. But we do not think the judgment was conclusive upon the state, or even evidence against it, except as to the fact of its existence. The general rule is that a judgment is not evidence against a third party, except of the fact of its existence. It is not evidence of the facts upon which it is based; and this judg- ment is not evidence against the state of the fact that the proper of- ficers did or did not omit to do any of the acts required to be done in the assessment or levy of the taxes, unless the state, in these proceed- ings, is to be regarded as in privity with Evans, or unless the statute (section 97, as amended) makes it so.

To show the state in privity with Evans, so as to be bound by the judgment against him to the same extent that he was, this proposi-

tion is made: that by taking the assignment of the tax-sale certificate, Evans became the assignee of the state's claim and lien for the taxes, and the refundment of the money to him operated as a reassignment of that claim and lien, and that it is as his assignee that the state is now endeavoring to enforce payment of the taxes. The law in force at the time of the purchase from the state provided (Gen. St. 1866, c. 11, § 142,) that if the sales should prove invalid, the purchaser should be entitled to receive from the owner of the land the amount of taxes and penalty and interest legally due thereon,. and that the land should be bound for the payment thereof; also (section 151) that the purchaser should be taken in all courts as the assignee of the state; that the amount of taxes, interest, and penalty charged, and all taxes subsequently paid by him, should be a lien on the land and might be enforced by him as any other lien; and also (section 155) that when any tax sale should be declared void by judgment of court, or should be void by reason of the taxes having been paid, the money paid by the purchaser should be repaid to him out of the county treasury.   The purchaser made his purchase on the condition that if the sale should be so declared void, the money should, on his claiming it, be refunded to him; that is, that the transaction, as between him and the state, might be by him rescinded.   That would simply annul all rights acquired by him at the sale, and, so far as he was concerned, leave the case as though the sale had not been made.   That is a much more natural effect to give to the transaction than that of a reassignment, which would put the state in the position of deriving the right and power to enforce payment of taxes through him—a power which he could exercise only through an action.   The state was therefore not the assignee, and not in privity with him, so as to be by it bound in favor of the contesting owner as to the facts on which it was based.

There is nothing in section 97, as amended, to indicate an intent that the state shall be bound by the judgment, except to the extent that it avoids the sale.   For the right of the state to enforce payment of the taxes, notwithstanding the judgment, or rather because of the judgment; is saved to it in all cases of refundment, without exception; whereas, if it were conclusively bound by the judgment as to

the facts on which it was based, it would, in a great majority of instances, conclusively bar that right.

We conclude, then, that the judgment was evidence in these proceedings only of the fact that the prior sale was adjudged void; but was not evidence of the reasons for it, or the facts on which it was based.

It is claimed in the Sedgwick case that the state is estopped by the indorsement on his deed by the county auditor. That indorsement is intended only to admit the deed to record; it is not intended for the information and guidance of the grantee in the deed, and, if he choose to rely upon it, he does so at his own risk; and he cannot claim that the state is affected by it, except for the purpose for which it is required, to wit, to entitle the deed to be recorded.

Judgments reversed and new trials ordered.

---

The clerk refused in this case to tax costs. On appeal taken, the following decision was rendered, December 28, 1883:

*By the Court.* Upon case certified to this court from a district court, under Gen. St. 1878, *c.* 11, § 80, no costs or disbursements are allowed to either party. The clerk's refusal to tax costs affirmed.