Shohl, J.
This was an action in which plaintiff sought-to enjoin the auditor of Hamilton county from listing on the tax duplicate as taxable property plaintiff’s' membership in the New York Stock Exchange, and to restrain the treasurer from collecting taxes thereon.
The case is heard in this court on appeal, and there is a stipulation as to the facts, in addition to the admissions in the pleadings.
The plaintiff is, and has been for a number of years, a member of the New York Stock Exchange, an unincorporated association of eleven hundred members. It owns the entire capital stock of The New York Stock Exchange Building Company, a corporation which holds title to real estate in New York City, and certain other stocks and securities. It furnishes exchange rooms and other facilities in New York City for the convenient transaction of brokerage business by , members. The right conferred by the membership is to trade in accordance with the regulations which now authorize trading at the Exchange in New Yotk City, and not elsewhere, in certain securities listed on said Exchange, according to certain conditions, and at certain hours. Persons are admitted to membership only upon the vote of two-thirds of the fifteen members comprising- the' committee on admissions! They pay annual dues, and there is a life insurance feature for the 'benefit of their families. A transfer of membership may be made *331 upon the submission of the name of the candidate •to the committee on admissions and the approval of the transfer by two-thirds of the committee. There are no stock certificates, but persons elected are notified by letter signed by the secretary. The Exchange has regular meetings at which officers and committees are elected, and they manage the business of the association. The plaintiff paid over $60,000 for his seat. It has a market value, and, subject to the acceptability of the transferee to the committee on admissions, is transferable by sale. The market value ranged from $60,000 or thereabouts in 1911 to as low as $34,000 in 1914 and as high as $70,000 and over at the present time. Under the rules of the Exchange members charge their customers not less than one-eighth o'f one per cent, as commission for purchases and sales o'f securities. When such purchaser is another member, however, he may purchase for a commission of one-fourth the regular amount, and, in certain cases, for one-fiftieth of one per cent. In the case of removal or suspension of a member, or at his death, his seat is sold and the net proceeds of such sale, after satisfying the claims of such creditors as are members, are paid over to the member or his personal representatives.
Plaintiff contends that the membership is a privilege incident to real estate in New York, that it is an incorporeal hereditament, and therefore not taxable in Ohio; second, that even if it is property in Ohio, it is not within the terms of the statute specifying the property which should be listed for taxation; and, third, that if the property were taxed in Ohio it would violate constitutional rights.
*332 There is no question but what a seat on a stock exchange is property. It is conceded by counsel, and the authorities are clear. Rogers v. Hennepin County, 240 U. S., 184; Page v. Edmunds, 187 U. S., 596 (Philadelphia Stock Exchange); Sparhawk v. Yerkes, 142 U. S., 1 (New York Stock Exchange); Hyde v. Woods, 94 U. S., 523 (San Francisco Stock and Exchange Board); In re Currie, 185 Fed. Rep., 263; O’Dell v. Boyden, 150 Fed. Rep., 731; Bank v. Abbott, 181 Mass., 531; State v. McPhail, 124 Minn., 398; Powell v. Waldron, 89 N. Y., 328, and Platt v. Jones, 96 N. Y., 24.
It is not taxed in New York under the general laws (People, ex rel., v. Feitner, 167 N. Y., 1), though it is taxable under the New York inheritance tax law. Matter of Hellman, 174 N. Y., 254.
' In the Rogers case, 240 U. S., at page 189, the court cites with approval the language of the Minnesota case as follows:
“A membership has a use value and a buying and selling or market value. It is bought and sold. * * * There is a lien upon it for balances due members. * * * It passes by will or descent and by insolvency or bankruptcy. * * * It is true that there are certain restrictions in the ownership and use of a membership. These may increase or decrease its value, probably 'in the case of a board of trade membership greatly enhance it. They do not prevent its being property.”
The exact nature of the property arising from membership in a stock exchange has not been conclusively adjudicated by the supreme court. In support of the argument that it constituted real *333 estate in New York, reference was made by plaintiff to the case of Louisville & Jeffersonville Ferry Co. v. Kentucky, 188 U. S., 385, holding that the ferry franchise granted by the state of Indiana was an incorporeal hereditament, and therefore not taxable in Kentucky. On first impression there are points of similarity between a membership in a stock exchange and a ferry franchise. The rights to exercise the incidents of membership as to buying and selling stocks and securities .are with respect to a specific piece of real estate in New York City, at least the present rules of the Stock Exchange so indicate. A careful analysis of the Ferry Company case shows, however, that the decision rests primarily upon historical reasons. See pages 394, 395. The references to Kent’s Commentaries and Washburn on Real Property show this, and the court points out that a widow has been allowed dower in a ferry.
The law of incorporeal hereditament's is a relic of mediaeval law. 2 Pollock and Maitland’s History of English Law, pages 123-148, shows how the jurists of earlier days regarded certain rights with respect to land as “things.” 1 Tiffany on Real Property, pages 9-13, shows the modern law, and summarizes as follows:
“We find that the only things of this nature recognized m this 'country are rights as to the use or profits of another’s land, and franchises, or certain classes of franchises, and' -consequently these, together with land and things annexed thereto (-corporeal things real), are among the subjects of real property.”
*334 There is no authority and no justification for any extension of the law in respect to incorporeal hereditaments to adjudge a stock exchange membership to be realty. It does not descend to the heirs of the owner. The title to the land on which the 'business is done is held in fee simple in the realty corporation. The unclouded title could be conveyed away by it without the plaintiff’s consent. It is urged that the ownership of all the stock in the realty company is a mere form, and that plaintiff’s interest is substantially in real estate. This is no more true than a similar claim with respect to the right of a shareholder in any realty company. Such stock is personalty no matter what the corporation owns. Morawetz on Private Corporations, Section 225; Hawley v. Malden, 232 U. S., 1, 12, and Lee v. Sturges, 46 Ohio St., 153, 161.
The nature of a membership in an exchange was before the supreme court in the case of Rogers v. Hennepin County, 240 U. S., 184. The question involved there arose in connection with the tax-ability of a membership in the Chamber of Commerce of Minneapolis. The tax authorities were claiming that memberships were taxable in Minnesota. If such memberships constituted incorporeal hereditaments, and were therefore realty, it would have been very simple for the supreme court, to have said so and to have decided the case upon that ground. At page 191 the court uses the analogies of a credit in favor of a nonresident, and of shares of stock. We do not regard the right as being in the nature of an incorporeal hereditament, but that does not dispose of that question. There is no doubt that a state law which *335 attempts to tax personal property permanently situated in another state is void. Southern Pacific Co. v. Kentucky, 222 U. S., 63, 74; Western Union Telegraph Co. v. Kansas, 216 U. S., 1; Metropolitan Life Insurance Co. v. New Orleans, 205 U. S., 395; Union Refrigerator Transit Co. v. Kentucky, 199 U. S., 194; Delaware, L. & W. Rd. Co. v. Pennsylvania, 198 U. S., 341, and State Tax on Foreign-held Bonds, 15 Wall., 300.
Under the Rogers case, 240 U. S., 184, the membership could be taxed in New York. That does not necessarily prevent it from being within the power of the state of Ohio to tax it. Fidelity & Columbia Trust Co. v. Louisville, 245 U. S., 54, 58, and Blackstone v. Miller, 188 U. S., 189, 204, 205.
In Hawley v. Malden, 232 U. S., 1, in distinguishing the Louisville Ferry Company case from the case of a share of stock, the supreme court says at page 12:
“While the shareholder’s rights are those of a member of the corporation entitled to have the corporate enterprise conducted in accordance with its charter, they are still in the nature of contract rights or choses in action. Morawetz on Corporations, § 225. As such, in the absence of legislation prescribing a different rule, they are appropriately related to the person of the owner, and, being held by him at his domicile, constitute property with respect to which he is under obligation to contribute to the support of the government whose protection he enjoys. Kirtland v. Hotchkiss, 100 U. S., 491; Bonaparte v. Tax Court, 104 U. S., 592; Covington v. First National Bank, 198 U. S., *336 100, 111, 112; Southern Pacific Co. v. Kentucky, supra; Cooley on Taxation (3d ed.), 26.”
The rights of a member of a stock exchange likewise entitle him to have the enterprise conducted in accordance with its regulations and purposes, and, are likewise in the nature of contract rights or choses in action. The right to go to the Exchange Building on Wall street and there buy and sell is no doubt the most important incident of the membership, but the right to “split commissions” and the right of a member to procure the service of other brokers at a lower rate are also valuable rights. They follow him wherever he goes. The relationship between the members is governed by the constitution of the Exchange which every member' is required to sign. By such signature he “pledges” himself to abide by the same and by all subsequent amendments thereto. The basis of his rights therefore is a contract, a chose in action.
. The situs of an ordinary chose in action is well settled. It is regarded as property where the obligee is.. In the case of State Tax on Foreign-held Bonds, 15 Wall., 300, the court considers the suggestion that a debt is property where the debtor is. At page 320 the court says:
“To calls debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due.”
*337 The normal situs for purposes of taxation of choses in action is at the domicile of the owner. Southern Pacific Co. v. Kentucky, 222 U. S., 63, 76; Union Refrigerator Transit Co. v. Kentucky, 199 U. S., 194, 205; Bonaparte v. Tax Court, 104 U. S., 592; Kirtland v. Hotchkiss, 100 U. S., 491, and 1 Cooley on Taxation (3 ed.), 89-93, 650, 651.
As this property is in the nature of a chose in action it is taxable at the domicile of the owner. It has been established that under certain exceptional conditions choses in action may be given a situs for taxation elsewhere. Hawley v. Malden, 232 U. S., 1, 12; Liverpool, etc., Ins. Co. v. Orleans Assessors, 221 U. S., 346; Metropolitan Life Ins. Co. v. New Orleans, 205 U. S., 395; Blackstone v. Miller, 188 U. S., 189; Kidd v. Alabama, Id., 730; New Orleans v. Stempel, 175 U. S., 309, 314, and State, ex rel. Goetzman, v. Minn. Tax Comm., 136 Minn., 260, 161 N. W. Rep., 516.
‘In the Hawley case the court states that the question does not arise there, and need not be decided, whether the provision by the state, that incorporation fixes the situs of shares for the purpose of taxation there, excludes the taxation of the shares by other states in which the owners reside. The case of Fidelity, etc., Trust Co. v. Louisville, 245 U. S., 54, probably ends the doubts on this point. But in the case at bar no such provision is involved. The normal situs for taxation at the domicile has therefore not been disturbed. It follows that the state of Ohio has the power to impose a tax upon plaintiff’s membership in the New York Stock Exchange.
*338 Section 2, Article XII of the Ohio Constitution, imposes upon the general assembly the duty to pass laws taxing all property at its true value in money, with certain exceptions. This requires the enactment of laws to carry it into effect. City of Zanesville v. Richards, 5 Ohio St., 589, 593, and Exchange Bank v. Hines, Treas., 3 Ohio St., 1.
Unless statutes have been passed which include the property in question it is not taxed. Whitely v. Arbogast, Treas., 6 N. P., N. S., 313, 9 C. C., N. S., 584, affirmed Arbogast, Treas., v. Whiteley, 79 Ohio St., 429.
The question then is, Have laws been passed taxing property of this character?
In the case of Gould v. Gould, 245 U. S., 151, the court states that in the interpretation of statutes imposing taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In cases of doubt they are construed in favor of the citizens. The statutes there involved were passed pursuant to constitutional provisions that enabled the legislature to enact statutes. A special rule applies where the legislature is passing statutes which it is,specifically required to enact. The purpose of the framers of the Ohio statutes must be interpreted in view of that constitutional duty.
In the case of Lee, Treas., v. Sturges, 46 Ohio St., 153, the court says at page 159:
“It is clear that the purpose of section one is to tax all investments in stocks held within the state. This we are bound to assume, for every presump *339 tion is in favor of that construction of the law which gives effect to the requirement of the section of the constitution referred to, and we are forced to the conclusion that the general assembly, in enacting this law, intended, so far as the complex nature of human business affairs should make it practicable, to include within the taxing provisions all property within the state.”
The precise distinction seems to have been in the contemplation of the court in the case of City of Cincinnati v. Connor, 55 Ohio St., 82, 91, wherein the court says:
“The rule generally prevails that, independent of any legislative requirement on the subject, statutes imposing taxes and public burdens of that nature are to be strictly construed; and where there is ambiguity which raises a doubt as to the legislative intent, the doubt must be resolved in favor of the subject or citizen on whom the burden is sought to be imposed.”
Section 5328, General Code, provides:
“All real and personal property in this state, belonging to individuals or corporations, and all moneys, credits, investments in bonds, stocks, or otherwise, of persons residing in this state, shall be subject to taxation, except only such property as may be expressly exempted therefrom. Such property, moneys, credits, and investments shall be entered on the list of taxable property as prescribed in this title.”
We have already decided that a seat on the stock exchange constitutes personal property in this state. It is taxable, therefore, unless Section 5328 is limited by Section 5325. Section 5325 defines *340 personal property, and, being in pari materia, the two sections must be construed together. (City of Cincinnati v. Connor, 55 Ohio St., 82, 89.) If, therefore, “personal property,” as used in Section 5328, includes only the enumerated items set forth in Section 5325, it may be difficult to find it specified therein.' A majority of the court are of the opinion that it might be included under the phrase “the capital stock, undivided profits, and all other means not forming part of the capital stock of every company, whether incorporated or unincorporated, and every share, portion, or interest in such stocks, profits, or means, by whatsoever name designated.” I can not agree with them as to that.
The entire court is in agreement as to the following: Section 5325 provides that “the term ‘personal property’ as so used, includes,” etc. Then follows an enumeration of certain forms of property. This does not exclude the property in question. If the statute had been passed pursuant to constitutional provisions which merely authorized or empowered the levying of a tax, we would be disposed to hold that other kinds of property were excluded by force of the rule “expressio unius est exclusio alterius.” However, the legislature was required to pass laws subjecting all real and personal property to taxation. The effect to be given to this is well stated by the supreme court of Minnesota. That state had a constitutional provision substantially like that of Ohio. In the case of State v. McPhail, 124 Minn., 398, in discussing whether a seat of the Duluth Board of Trade was taxed, the court says, at page 404:
*341 “Section 797 names 11 specific classes of personal property, in no one of which are 'by name included Board of Trade memberships. So far as here material, its language is as follows: ‘Personal property’ * * * shall be construed to include:
“ ‘1. All goods, chattels, moneys and effects.’ Then follows 10 other particular classes of property.
“Section 835 provides that the assessor shall fix the value of the items of personal property under 30 heads, the last of which is ‘The value of all other articles of personal property not included in the preceding items.’
“We think it should not be held that section 797 was intended to describe all personal property that was subject to taxation. The language of the section does not compel such a conclusion. ‘Shall be construed to include’ does not necessarily mean ‘shall only include.’ The section was not intended to be restrictive, but rather to help define what was meant by ‘all personal property,’ as that term is used in section 794. This view is greatly strengthened by the unquestioned fact that it is the settled policy of the state, as expressed in its constitution, statutes, and decisions, that all property within the state shall be taxed, unless exempt. Board of Co. Commrs. of Rice County v. Citizens’ National Bank of Faribault, 23 Minn., 280, 286; State v. Jones, 24 Minn., 251; County of Olmsted v. Barber, 31 Minn., 256, 17 N. W. 473, 944; In re Jefferson, 35 Minn., 215, 219, 28 N. W. 256; State v. Stearns, 72 Minn., 200, 222, 75 N. W. 210. In the Rice County case, decided in 1877, in referring to section 1. c. 1, p. 1, Laws 1874, which provides that *342 ‘all real property in this state, and all personal property of persons residing therein * * * is subject to taxation/ the court said: ‘The evident purpose of this section was to declare, in general terms, that all property, both real and personal, within the jurisdiction of the state, unless specially exempted, should be subject to taxation.’ In State v. Jones, where it was decided that a certain debt was property and subject to taxation, Chief Justice Gilfillan said: ‘This debt was property, and it was the intention both of the constitution and statute that all property, unless expressly exempted, should be taxed.’ At the time these and other decisions were rendered, there were in force statutory provisions similar to section 797, Laws 1874, p. 1, c. 1, § 3, provided that ‘personal property shall, for the purposes of taxation, be construed to include’ certain described classes of property, and the same provision was contained in chapter 1, section 3, Laws 1878, in chapter 11, §3, G. S. 1878, and in section 1510, G. S. 1894. In no case has it been considered that these provisions amounted to a declaration that no property was to be taxed that was not covered by the classes. It would have been a breach on the part of the legislature of a duty •imposed by the constitution to omit from taxation property that was not exempt, and we certainly should not find such a breach unless the statute is fairly open to no other construction.”
Unless the statute is fairly open to no other construction we should not impute to the legislature an intention to omit from ■ taxation property which the constitution requires it to tax.
(Decided February 20, 1919.)
Mr. Murray Seasongood, for plaintiff.
Mr. Louis H. Capelle, prosecuting attorney, and Mr. S. C. Roettinger, assistant prosecuting attorney, for defendants.
The application for an injunction must be rer fused, and the petition will be dismissed.

Injunction refused, and petition dismissed.

Jones, P. J., and Hamilton, J., concur.