**In the Matter of the Petition of Glen D. WILSON, d/b/a Granite City Moving & Storage, Transferor, and John S. Herold, Transferee, to Transfer Irregular Route Common Carrier Permit Authority.**

No. C8–90–1527.

Court of Appeals of Minnesota.

Feb. 19, 1991.

App. May 2, 1989).

John R. Koch, St. Cloud, for relator John S. Herold.

Grant J. Merritt, Minneapolis, for respondents Vector Moving Systems, Red's Transfer & Storage, Inc.

James H. Wills, Kalina, Wills & Woods, Columbia Heights, for respondents Glen D. Wilson, Granite City Moving & Storage.

Andrew R. Clark, Robert D. Gisvold, Minneapolis, for respondents Berger Transfer, Inc., Hyam Freightways, Inc.

Hubert H. Humphrey, III, Atty. Gen., Jon Erik Kingstad, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Transp. Regulation Bd.

Considered and decided by NORTON, P.J., and FOLEY and HUSPENI, JJ.

OPINION

HUSPENI, Judge.

Relator John S. Herold seeks review of an order by the Minnesota Transportation Regulation Board (MTRB) which denied a petition to transfer an irregular route common carrier permit to Herold. The MTRB denied the petition because it determined Herold was not fit and able to comply with the statutes and regulations governing motor carriers in Minnesota. We reverse.

FACTS

On July 22, 1988, Herold and Glen Wilson filed a joint petition with the MTRB to transfer Wilson's intrastate irregular route common carrier (IRCC) authority to Herold. An administrative law judge (ALJ) was assigned to conduct a hearing on the petition. Herold was the only witness at the hearing.

The evidence indicated that in 1964, Herold registered the trade name "Granite City Moving & Storage" with the Minnesota Secretary of State. In 1970, Herold began operating under Wilson's IRCC authority, and Wilson registered his authority under the name "Glen Wilson, d/b/a Granite City Moving & Storage." Although the parties agreed that Herold was to manage Wilson's business, their alleged employment relationship was never reduced to writing. The parties did enter into a lease arrangement in January, 1970, whereby Wilson leased a vehicle from Herold.

In 1974, Herold and Wilson filed a petition with the Public Service Commission (a predecessor to the MTRB) to transfer Wilson's IRCC authority to Herold. Following a hearing, the Commission denied the petition, determining that Wilson had not exercised his authority within the previous two years; therefore he had nothing to transfer:

Since January 1970, [Wilson] has not actively engaged in transportation services under his authority.

\* \* \* \* \* \*

Bills of lading or moving tickets submitted at the hearing by joint petitioners showed, along with petitioners' testimo-

ny, that [Herold] has been actively engaged in transportation services as a household mover. He has done so under color of [Wilson's] authority *but in the absence of any employment or lease arrangement with [Wilson].*

(Emphasis added.)

Shortly before the Commission's order was issued, Wilson and Herold signed a "Manager's Agreement," providing that Herold would manage and operate Wilson's business, lease vehicles to the business, and pay all expenses and insurance for the business. In return, Herold was to receive 93% of the gross income, and was granted an option to purchase the business and permit. Herold agreed to hold Wilson harmless from liabilities incurred in connection with the business.

Herold made no attempt to cover up the fact that the parties' 1974 petition was denied, or that the Manager's Agreement was drafted to address the Board's concerns in its 1974 decision. Rather, Herold testified that the parties entered into the Manager's Agreement because of the Commission's denial of their petition to transfer Wilson's permit. Herold specifically testified that he wanted to follow the Board's requirements. He introduced documents into the record suggesting the Board had approved of the parties' arrangement.

Herold testified that Wilson was retired, but wanted part of his business to remain active. Wilson visited the business approximately once each year, although in the four years prior to the parties' 1988 petition, he only contacted Herold by telephone.

The evidence indicated that Herold did "just about anything that normally Glenn Wilson would have done himself had he been active." These duties included keeping records, arranging for insurance, filing annual reports, obtaining cab cards, and submitting monthly reports and checks to Wilson for 7% of the line haul from local and intrastate moves.

Herold filed annual reports with the Department of Transportation in the name of "Glen Wilson, d/b/a Granite City Moving & Storage," and the cab cards for the business vehicles were listed in Wilson's name. However, Wilson's association with Granite City Moving & Storage was not apparent in or on bills of lading, invoices, advertising, cab placards, or the company's checking account.

Following the hearing, the ALJ issued findings of fact, conclusions and a recommendation that the MTRB grant the parties' petition to transfer the permit to Herold. The ALJ found that the date of the parties' transfer of authority was sometime between June 1 and July 22, 1988—not 1970 when the parties began their arrangement. The ALJ specifically found that Wilson exercised his authority under the permit after 1974:

The PSC, in its November 5, 1974 Order, found that Herold had been actively engaged in transportation services as a household mover under color of Wilson's authority *but in the absence of any employment or lease arrangement with Wilson.* * * * [I]t was the inability to prove that such arrangements existed that defeated the 1974 Petition. The Joint Petition under consideration in this proceeding does not suffer from those defects.

The Manager's Agreement made on October 30, 1974 cures the defects found by the Commission * * * Glen Wilson, d/b/a Granite City Moving & Storage, which is owned by Wilson and managed by Herold, is the entity that has exercised all authority used under Permit No. 942 since the Manager's Agreement was signed.

\* \* \* \* \* \*

The October 30, 1974 Manager's Agreement is a valid employment agreement. Even though Wilson performed only a few management functions, and all of these were performed in the early years since the contract was executed, the business was still his property and he retained the right and power to initiate any level of involvement he so chose. His willingness to leave the details of the business to Herold should not be decisive

because Wilson never gave up his right to exercise control.

\* \* \* \* \* \*

In this case, the evidence is clear that the parties intended for Wilson to own the name "Granite City Moving & Storage", and that moves made under that name were intended to be his.

The MTRB, in an Order After Report, adopted many of the ALJ's findings, but declined to adopt the ALJ's recommendation that the parties' petition be granted. The MTRB determined that Herold was not fit and able to perform the operations authorized under the permit because the Manager's Agreement was a "subterfuge" for what was in effect a transfer of permit authority without Board approval. The MTRB concluded that between 1970 and 1974, Herold had been engaged in transportation services under color of Wilson's authority, and this arrangement, although reduced to writing, never changed after 1974.

Herold has obtained a writ of certiorari, seeking review of the MTRB's order.

### ISSUE

Did the MTRB err by determining that Herold was not fit and able to conduct operations under a transfer of Wilson's IRCC permit authority?

### ANALYSIS

 Minn.Stat. § 221.151 (1988) governs the transfer of motor carrier permits. Pursuant to this section, the legislature has determined that the MTRB "shall approve the sale or lease of a permit only after a finding that the transferee is *fit and able* to conduct the operations authorized under the permit." Minn.Stat. § 221.151, subd. 1 (emphasis added). A petitioner has the burden of proving that he is "fit and able" to conduct the authorized operation. *See Brinks, Inc. v. Minnesota Public Utilities Comm'n*, 355 N.W.2d 446, 450 (Minn.App. 1984); *Signal Delivery Service, Inc. v. Brynwood Transfer Co.*, 288 N.W.2d 707, 712 (Minn.1980). MTRB rules defining "fit and able" require in relevant part that an applicant be "mentally and physically able

to comply with rules and statutes of the commission." Minn.R. 7800.0100, subpt. 4 (1989).

The MTRB found that Herold was not fit and able to conduct business under the proposed transfer of Wilson's permit because Herold had violated the statutory provisions of Chapter 221 when, prior to 1988, he effectively operated under an unauthorized transfer of permit authority. The MTRB found that the Manager's Agreement signed by the parties was merely a subterfuge for the unauthorized transfer of Wilson's permit authority. We do not find substantial evidence in the record to support this finding. *See* Minn.Stat. § 14.69(e) (1988). Rather, we believe the ALJ's findings better represent the state of the record.

Notably, the MTRB's determination that the parties' arrangement was a "subterfuge" deviated substantially from the ALJ's determination that the parties had operated under a valid employment agreement. While the courts have indicated that a board should not merely "rubber stamp" the findings of a hearing examiner, *City of Moorhead v. Minnesota Public Utilities Comm'n*, 343 N.W.2d 843, 846 (Minn.1984), nevertheless, the board should not take the ALJ's findings lightly:

A hearing examiner's report and recommendations should not be summarily rejected without reasons.

*Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 472 (Minn.App.1984).

In the present case, the ALJ apparently determined that Herold's testimony was credible and that the parties actually intended to comply with MTRB statutes and rules at all times. In fact, the record demonstrates the parties' attempted compliance. In 1974, the MTRB denied the parties' petition, reasoning they had not entered into a written agreement. The parties accordingly entered into such an agreement. For fourteen years thereafter, they operated under such agreement, with the apparent acquiescence of the MTRB.

Nevertheless, the MTRB determined the parties' arrangement constituted a subterfuge for an unauthorized transfer of per-

mit authority. The MTRB reasoned in part that Wilson lacked control over the business operations. As authority for its decision, the MTRB cited *United States v. Drum*, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962). In *Drum*, however, the court recognized that a finding of control is not determinative; rather, the total substance of the parties' relationship must determine the need for a permit. *Id.* at 382–84, 82 S.Ct. at 414–15.

The *Drum* court held that owners of tractor-trailers who leased their vehicles and services to a manufacturer, but who continued to bear the expenses of operation and the risk of profit or loss from transportation hazards, should be considered carriers for hire required to obtain permits from the Interstate Commerce Commission. Although the *Drum* court noted that the manufacturer retained the right to control the transportation, the court looked to the substance of the parties' relationship, and concluded the owner-operators had assumed the risks of transportation to an extent requiring them to obtain ICC permits.

Notably, the same concerns which led the *Drum* court to its decision are absent here. The parties' business arrangement does not attempt the same mischief that the *Drum* court sought to avoid; i.e., circumvention of the public interest in maintaining a stable transportation industry, harm to existing carriers, or emancipation of a carrier from the burdens of transportation. The issue in the present case is *who* should be authorized under the existing permit; not whether a permit should be required, as in *Drum*.

The Minnesota legislature has provided that when determining the authority exercised under a permit, the MTRB must examine "the substance of the transaction rather than the form." Minn.Stat. § 221.151. Where, as here, the permit holder leases vehicles from the carrier, the parties' transaction should also be examined in light of the purpose of the MTRB's leasing rules:

[T]o insure that the primary responsibility for the conduct of regulated motor carrier operations remains in the authorized motor carrier, and that the members of the public using motor carrier services are clearly advised of the identity of the responsible carrier, and that the leasing of equipment by an authorized motor carrier from an owner thereof is not a subterfuge for leasing the carrier's permit or certificate to the owner-lessor.

Minn.R. 7800.2500 (1989). Here, there is no question that the permit was in Wilson's name, that Wilson remained liable under the permit, and that he retained the legal authorization to control the operations. The parties' operation was a valid management relationship, not a subterfuge for an unauthorized transfer of permit authority.

## DECISION

The record does not support the finding that Herold was not fit and able to assume Wilson's permit authority.

Reversed.

FOLEY, Judge (dissenting).

I respectfully dissent. It is my view that the order of the Minnesota Transportation Regulation Board that denied a petition to transfer an irregular route common carrier permit to Herold should be affirmed.

MTRB rules define "fit and able":

The term "fit and able" shall mean that the applicant is financially able to conduct the proposed business; that the applicant's equipment is adequate and properly maintained; that the applicant is competent, qualified, and has the experience necessary to conduct the proposed business; [and] *that the applicant is mentally and physically able to comply with rules and statutes of the commission.*

Minn.R. 7800.0100, subpt. 4 (1989) (emphasis added.)

The MTRB found that Herold was not fit and able to conduct business under the proposed transfer of Wilson's permit on the ground Herold had violated the statutory provisions of Chapter 221 by in effect operating under an unauthorized transfer of permit authority. The MTRB found that the Manager's Agreement was merely a

subterfuge for an unauthorized transfer of permit authority.

The MTRB supported its determination that the parties' arrangement constituted a subterfuge by citing Wilson's lack of control over the business operations. In fact, the evidence indicates that Wilson had minimal contact with Herold over the years the business was operating.

Because of the deference that is awarded to the decisions of the administrative agency, this court should affirm and not reach out to provide relief to Herold.

Here, the MTRB determined that the substance of the parties' agreement should govern the determination whether Wilson was actually exercising his authority under his permit prior to the attempted transfer to Herold. This determination is consistent with Minn.Stat. § 221.151 (1988), which states that in determining the authority Wilson exercised under the permit, "[t]he board [MTRB] shall look to the substance of the transaction rather than the form."

The MTRB's rules regarding leasing of vehicles provide:

> The purpose of these leasing rules is to ensure that the primary responsibility for the conduct of regulated motor carrier operations remains in the authorized motor carrier, and that the members of the public using motor carrier services are clearly advised of the identity of the responsible carrier, and that the leasing of equipment by an authorized motor carrier from an owner thereof is not a subterfuge for leasing the carrier's permit or certificate to the owner-lessor.

Minn.R. 7800.2500 (1989). The MTRB in the present case looked to the parties' lease arrangements, and determined that they were, in fact, a subterfuge for an unauthorized transfer of permit authority to Herold.

I would affirm.