STATE v. R. L. HORR.[1]

October 23, 1925.

No. 24,960.

**When doctrine of estoppel applies to state and when it does not.**

1. When a state acts in its prerogative of a sovereignty, the doctrine of estoppel has no application, but such doctrine does apply when the state makes itself a party to an action in its proprietary capacity.

**Doctrine of estoppel applies to this action.**

2. The state prosecuted such an action. The officials handling the matter assumed to make a compromise settlement. The prosecution of this action to recover the amount deducted by the compromise is not an attribute of sovereignty.

**Estoppel against state asserting invalidity of compromise settlement with its officers.**

3. Upon the facts stated in the opinion it is *held* that the state is estopped from asserting the invalidity of a compromise settlement contract, made by defendant with the attorney general and state auditor while handling the matter for the state, disposing of the litigation.

1. See Estoppel, 21 C. J. pp. 1186, 1187, § 190.
2. See Estoppel, 21 C. J. p. 1189, § 191.
3. See Estoppel, 21 C. J. pp. 1190, § 193 (Anno); 1252, § 269.

[1]Reported in 205 N. W. 444.

Action in the district court for Ramsey county to recover the remainder of the price of certain timber. The case was tried before R. D. O'Brien, J., who ordered judgment in favor of defendant. Plaintiff appealed from the judgment. Affirmed.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy Attorney General, and *Ernest C. Carman*, Assistant Attorney General, for appellant.

*Fryberger, Fulton, Hoshour & Ziesmer*, for respondent.

WILSON, C. J.

In October, 1912, in accordance with the laws of the state, plaintiff sold to defendant certain timber which was cut and removed, prior to June 1, 1914, by his assigns. The timber was scaled by an employe of the state, and the state auditor's office rendered bills to the defendant, who paid the amount demanded. In 1917 it was claimed by the state that the report of the state's scaler was false and made with the intention of concealing from the state the true amount of timber cut. In February, 1918, the state commenced actions against the defendant and his surety to recover additional moneys for timber which it claimed was cut in excess of that for which defendant had paid. In these actions issue was joined and a bona fide dispute existed between the parties. The parties made several attempts to rescale the amount of timber that had been cut from the land involved, and at different times attempted to appoint scalers upon each side to agree upon a scale of timber that had been cut. However, the conditions on the land, owing to lapse of time, weathering of stump, removal or burning of top and also owing to several fires through the cuttings, were such that an accurate rescale of the timber could not be made.

The controversy arose out of five different timber permits. There were five actions commenced. The aggregate claim was for $25,528.87. Negotiations between the parties and their counsel toward a compromise settlement resulted in the superintendent of state timber, an employe of the state auditor, under date of December 2, 1918, writing a letter to the attorney general, as follows, to-wit:

"Herewith I hand you corrected statements under the following timber permits and amounts—

| No. | 2332 | ..................... | $3,544.95 |
| | 2333 | ..................... | 1,880.15 |
| | 2334 | ..................... | 2,107.41 |
| | 2335 | ..................... | 3,001.25 |
| | 2336 | ..................... | 3,879.54 |
| | Total | .............. | $14,413.30 |

"This department recommends settlement on the above corrected statements in the suits pending by reason of the fact that a re-scale a year ago showed a substantial reduction from the original stump scale, and only recently this cutting was gone over and it was found that it is impossible to re-scale the same now, owing to several fires passing through the cuttings."

On the following day a stipulation in each case was entered into as follows:

"The parties to the above entitled action having agreed upon a corrected scale of the timber cut from the lands of the state under the above numbered permit as shown by the report of the state auditor to the attorney general of this date, and the defendant having paid into the state treasury the value of the timber so reported at the prices specified in the permit, and having paid also the disbursements incurred by the state in the bringing of this action,

"It is now stipulated that the above entitled action be dismissed of record without further costs or disbursements to either party.
"Dated December 3, 1918.

"CLIFFORD L. HILTON,
"Attorney General,
"JAMES E. MARKHAM,
"Assistant Attorney General,
"H. B. FRYBERGER,
"T. L. PHILIPS,
"Attorneys for defendant."

In 1923 the state commenced this action to collect the $11,115.57 with interest from January 5, 1917. This was the amount deducted in the compromise from the original aggregate claim. The defendant, answering, alleged the settlement and claimed that the state was estopped from prosecuting the present action.

The trial court found for the defendant and the state's alternative motion for amended findings or for a new trial was denied, and it now appeals from a judgment entered in favor of defendant.

In view of the conclusion reached, it is unnecessary for us to pass upon the authority of any of the state officials to make a compromise contract of settlement. The question presented is, do the facts estop the state from asserting the invalidity of the compromise settlement?

When a state acts in its prerogative of sovereignty, the doctrine of estoppel has no application. Examples include the exercise of police or taxation power. The state is free from its operation only when it would impair an inherent sovereign attribute. This is true only for reasons of public policy.

When the state steps into an industrial or commercial enterprise, it is subject to the same laws that govern and control individuals. If it becomes a party to a negotiable instrument, it has the rights and assumes the liabilities of an individual in a similar position. U. S. v. Bank of Metropolis, 15 Pet. 377, 392, 10 L. ed. 774; United States v. Barker, 12 Wheat. 559, 6 L. ed. 728; Cook v. United States, 91 U. S. 389, 398, 23 L. ed. 237.

Does the state in this action act in its sovereign capacity or in its proprietary capacity? It seems to us that the state, as a body politic or artificial person having the power to hold property as other persons natural or artificial, brings this action to redress an alleged wrong. If it were suing for trespass, its rights and remedies would be the same as an individual owner, and when it sues, as it does here, for the recovery of money, it asserts a pecuniary demand against a citizen of the state and the court has authority, and is under duty, to withhold relief to the state "except upon terms which do justice to the citizen or subject, as determined by the jurisprud-

ence of the forum in like subject-matter between man and man."
Walker v. U. S. (C. C.) 139 F. 409. When the state comes into a
court asserting a property or pecuniary right, it occupies the posi-
tion of any and every other suitor. "Its rights are precisely the
same; no greater, no less." Mountain Copper Co. v. United States,
142 F. 625, 73 C. C. A. 621; Denver & R. G. R. Co. v. U. S. 241 F.
614, 154 C. C. A. 372.

If the state, by virtue of section 2 of article 8 of our Constitution
and the grant of the school lands, received these lands in its
sovereign capacity to hold in trust for the school fund, it does not
follow that it does not act in its proprietary capacity in making
contracts and conducting litigation in reference thereto. The claim
that the state now acts in this suit in its sovereign capacity is
without support in principle. The state holds title. It is the
proprietor of these lands. It has dominion over them. It ad-
ministers them. Out of this administration an alleged claim has
arisen, and the state has come into court to enforce that claim.
What it is required to do with the money received is not the ques-
tion. The prosecution of this suit is not an attribute of sovereignty.
It is an attempt to enforce a claim in which the state puts itself on
the plane of the ordinary citizen who does likewise. In so doing it
submits to the jurisdiction of the court as though it were an in-
dividual and in a limited measure is subject to judicial control. We
hold that in the prosecution of this action the state is acting in its
proprietary capacity and not in its sovereign capacity.

It is the law that, when a state makes itself a party to an action
or to a contract in its proprietary capacity, it is subject to the law
of estoppel. St. Paul S. & T. F. R. Co. v. First Div. St. P. & P. R.
Co. 26 Minn. 31, 49 N. W. 303; State ex rel. Douglas v. School Dis-
trict No. 108, 85 Minn. 230, 88 N. W. 751; State ex rel. Simpson v.
County of St. Louis, 117 Minn. 42, 134 N. W. 299; C. St. P. M. & O.
Ry. Co. v. Douglas County, 134 Wis. 197, 114 N. W. 511; U. S. v.
Midway Northern Oil Co. (D. C.) 232 F. 619, 631; U. S. v. Pennsyl-
vania & L. E. Dock Co. (C. C. A.) 272 F. 839, 843; State v. Flint &
P. M. R. Co. 89 Mich. 481, 51 N. W. 103.

Estoppel rests upon principles of universal justice and commands the observance of honest dealing. U. S. v. Willamette V. & C. M. W. R. Co. (C. C.) 54 F. 807, 811. As quoted by this court in State ex rel. v. School District No. 108, 85 Minn. 230, 88 N. W. 751, from State v. Milk (C. C.) 11 F. 389, 397:

"Resolute good faith should characterize the conduct of the states in their dealings with individuals, and there is no reason, in morals or law, that will exempt them from the doctrine of estoppel."

The courts hold that this defense applies to the state "in a proper case" without making a more concrete declaration. "What is a proper case no court seems yet to have attempted to define." 19 Harvard L. R. 127. Nor is there any necessity for any such attempt. It is better that each case be controlled by its own facts. In the instant case the stipulation says: "The parties * * * having agreed upon a corrected scale * * * as shown by the report * * * and the defendant having paid * * * the value of the timber so reported," etc. Can it be supposed in the face of such language that the amount so paid to the state was merely to apply upon account and that the state at the pleasure of its officials in the future, the statute of limitations not binding the state, could sue at any time? Defendant could not have so understood it.

It is now claimed that this was the belief of the state and that this rather unconscionable remedy or procedure was in mind when the settlement was made. If so, why wait five years before asserting this demand? In all probability the means of proof were constantly diminishing. The physical conditions preventing a rescale five years before would become, if possible, a still greater barrier. Delay in a case of this character is obviously detrimental to the defendant and ordinarily not beneficial to the plaintiff. The state should always bring controversies to a speedy conclusion; and it is well known that by lapse of time the adequate sources of evidence are surely obliterated. The consequence is that when the state seeks its rights in a court, good conscience requires that the rights of others as well be protected. Carr v. U. S. 98 U. S. 433, 438, 25 L. ed. 209; U. S. v. Stinson, 125 F. 907, 63 C. C. A. 615.

We ordinarily look to the action of the state to be characterized by a more scrupulous regard to justice than belongs to the ordinary person. The state is formed for the purpose of securing for its citizens impartial justice, and it must not be heard to repudiate its solemn agreement, relied on by another to his detriment, nor to perpetrate upon its citizens wrongs which it would promptly condemn if practiced by one of them upon another. It seems unfair for the state to say in the settlement stipulation that it had agreed on the amount and now contend that such paper, in form a stipulation, and understood by defendant to be such, was in fact a receipt on an account, especially when the amount is not mentioned. The state should not have done what it did in consummating the settlement, if it did not intend to literally abide by it. The defendant paid a substantial sum of money. Part of it was doubtless in payment of an obligation and part of it was apparently in compromise of a dispute. The fact is that the state agreed in the stipulation that the amount paid was the value of the timber covered by the "corrected scale" upon which the parties had agreed. This agreement was honestly procured and made. There was no fraud, but on the contrary it was made in the best of faith. The stipulation was prepared by the state.

Assuming for the purpose of this case that the officials of the state were unauthorized to make the contract of settlement, that fact would be of little moment because these officials were authorized to shape the conduct of the state in the particular matter and they acted within the purview of their authority. Such, under the circumstances of this case, is sufficient for a basis for the defense interposed. The negotiations in behalf of the state in making the settlement were had by the attorney general and the superintendent of state timber who was authorized by the state auditor to use his best judgment. The essence of estoppel is unfairness to the other party. Certainly defendant had no reason to suppose that the state expected to make further demand for the timber involved, and, in the absence of fraud, and in view of all the circumstances, the state cannot be heard to assert the invalidity of its contract of settlement. The defense of estoppel is established.

Affirmed.