## STATE v. H. P. GARDINER AND OTHERS.[1]

November 21, 1930.

Nos. 28,165, 28,172.

*Fryberger, Fulton & Boyle,* for appellant Gardiner.

*Henry N. Benson,* Attorney General, and *James E. Markham,* Deputy Attorney General, for the state.

OLSEN, J.

Defendant H. P. Gardiner appeals from an order denying his motion for a new trial, and plaintiff appeals from the judgment.

[1]Reported in 233 N. W. 16.

On February 28, 1918, the plaintiff brought two suits against defendant Gardiner and one R. J. Andrews, his copartner, to recover a total of $2,433.84, claimed to be due the state for timber cut on state land under contracts entered into between the parties in December, 1914. On March 6, 1918, the defendants went to the state auditor's office, were there referred to Oscar Arneson, the superintendent of state timber in that office, and made a settlement with him of the state's claim. The claim of the state was adjusted and settled at $2,100, which amount defendants paid to the state treasurer. A so-called trespass claim for cutting tamarack timber on the land, not included in the contracts nor in the suits, was paid to the extent of $900 at the same time, and the balance thereof, $362.23, was paid in full June 10, 1918. Mr. Arneson made out statements of the settlement in the state auditor's office and entries were made in the timber ledger in that office, wherein defendants' account was kept, showing the settlement and closing of the account. It was understood that the suits should be held in abeyance until a recheck was made of cull timber to determine if any further deduction should be allowed defendants thereon. This checking was done prior to June 1, 1918, and resulted in no further charge or deduction.

Defendants relied upon the settlement, employed no attorney to represent them, and interposed no answers in the suits. They believed that the whole matter, including the suits, was settled. No formal dismissal of the suits was made or filed. The attention of the attorney general was called to the fact that the suits had not been dismissed by letter from the then state auditor in March, 1924. The assistant attorney general, Mr. Carman, then wrote the state auditor, saying among other things: "We shall, therefore, file dismissal of said suit at once." Mr. Carman then wrote on the margin of the original summons in each case: "Claim of state paid to state treasurer June 3, 1918. Case closed March 25, 1924. Ernest C. Carman, Asst. Atty. Gen."

It is difficult to understand what remained of these lawsuits after that time. However, in March, 1929, Mr. Hunt, who had succeeded Mr. Diercks as superintendent of state timber in the auditor's office,

reported to the attorney general that he had discovered errors in the figures used by Mr. Arneson in his settlement with defendants and that such errors showed that the state should be entitled to $699.47 more than had been paid under the settlement. The attorney general then took steps to revive the lawsuits. Defendant Gardiner was notified. He then employed attorneys. By stipulation between his attorneys and the attorney general it was provided that Gardiner should interpose an answer to the suits and the plaintiff reply thereto, and the case be tried before the court without a jury.

Defendants had heard nothing concerning the claim from the time of the settlement completed in June, 1918, up to March, 1929. In the meantime Arneson had died, defendant Andrews had died and the partnership between him and Gardiner had been settled up. Gardiner is now dead and the administrators of his estate substituted, the parties who had cut the timber were gone, all scale reports made by state employes had disappeared, new men had been elected as state auditor and attorney general, and there was no available evidence upon which a fair re-examination could be made as to the timber cut or the settlement made. Defendant, by his answer, set up the settlement with Arneson, the laches and delay of the plaintiff, and claimed estoppel arising therefrom. Plaintiff by its reply set up the errors claimed to have been made by Arneson in his figures in the settlement as stated and abandoned any other claim except for the $699.47 alleged to have resulted therefrom.

We conclude from the whole record, which we have not attempted to set out in full, that the evidence clearly shows such laches and estoppel on the part of the state that it cannot now be permitted to come in and question items or figures of the Arneson settlement. True, Arneson had no authority to bind the state by any settlement; but the state received the money paid, entered the settlement on the record in the state auditor's office, and closed the account. It then remained content for 11 years, during which time defendants relied upon the settlement, and numerous changes detrimental to

defendants' interests took place if this settlement is now to be reopened. We do not impute any fault on the part of the present attorney general or his assistants. They have sought to perform the duty resting upon them to protect the state from any loss. But the facts disclosed present a situation where the state is not now justly entitled to prevail. State v. Horr, 165 Minn. 1, 205 N. W. 444.

The learned trial court recognized the difficulty by stating in its memorandum that because of the long delay and changed conditions the state was estopped from recovering any interest, and by refusing to allow interest in its order for judgment. We agree with the trial court that there was an estoppel, but hold that it extended to the entire claim.

The court in its memorandum said that the findings expressly negative the claim that any settlement was made by defendants with Arneson. As we read the findings, they do not clearly negative the fact that there was in form a settlement made. We construe the findings to mean that Arneson had no authority to bind the state by any settlement. The evidence that there was in form a settlement is so conclusive that a finding to the contrary could not stand. A further discussion of assigned errors is not deemed necessary.

Plaintiff's appeal from the judgment challenges the finding and conclusion of the court that plaintiff was not entitled to recover interest. Our conclusion on the issue of laches and estoppel disposes of plaintiff's appeal.

The order denying defendant's motion for a new trial is reversed, and the plaintiff's appeal from the judgment is dismissed.

HILTON, J. took no part.