## STATE v. HAMRE-HOGENSON HOLDING COMPANY.[1]

May 1, 1931.

No. 28,406.

*G. Halvorson,* for appellant.

*Henry N. Benson,* Attorney General, and *James E. Markham,* Deputy Attorney General, for the state.

STONE, J.

Defendant is the holder of four certificates of sale of state school lands. Such certificates entitled the holder to purchase the lands therein described at the stated price. Title remains in the state until the patent issues. G. S. 1923 (1 Mason, 1927) § 6287. In this action the state seeks the cancelation of defendant's four certificates. After trial without a jury there was a decision for plaintiff. Defendant appeals from the order denying its motion for amended findings or a new trial.

[1]Reported in 236 N. W. 456.

Four tracts of land in Clearwater county are involved. Tract No. 1 was appraised September 29, 1905, by appraisers who reported to the state auditor that it carried no timber and was suitable for agricultural purposes. Appraised at the minimum legal price of five dollars per acre, it was purchased at that price from the state June 9, 1909, by E. K. Hogenson. He is found to have had "full knowledge of the character of said land and knew that there was then growing thereon the stand of timber" further described in the decision below. The other three tracts were similarly appraised. Tract No. 2 was reported by the appraisers to the state auditor as without timber of substantial value and as low and swampy but suitable for agricultural purposes. A similar appraisal and report was made on the other two tracts. All three were purchased in 1914 by one Johnson, who was also found to have had knowledge of the actual character of the land and "that there was then growing thereon the stand of timber" further described in the decision below. Defendant corporation by assignment has become the owner of all four certificates under circumstances which by no means require a finding that it purchased for value, without knowledge of the actual character of the land and the state's rights therein.

Each tract, upon adequate evidence, was found to have carried at the time of appraisal and sale a substantial quantity of merchantable timber. The stand on tract No. 1 was found to have been worth $450; that upon tract No. 2, $900; that on tract No. 3, $1,860; and that on tract No. 4, more than $1,000. Furthermore, the land itself was found not suitable for agricultural purposes except in small areas, but on the contrary to be "a part of the timber lands of the state." All of it was sold as agricultural land, with no allowance for timber, at the minimum legal price of five dollars per acre.

The case must go to decision on statutory law.

G. S. 1923 (1 Mason, 1927) § 6261, after providing that the minimum price of school lands shall be five dollars per acre, goes on to require "that pine lands shall not be sold until the timber thereon has been sold according to the provisions of this chapter; and, when such timber has been sold and removed, the land may be appraised and sold as in this chapter provided."

With that should be read this provision from § 6277:

"Where land mainly valuable for agricultural purposes, as shown by the appraisement and other reports in the office of the land commissioner, contains only small quantities of pine, tamarack, or other timber, the land commissioner may in his discretion, either sell the timber separately in the manner provided by law for state timber sales, or he may sell the land as agricultural land, requiring the purchaser to pay down as first payment an amount equal to the value of the timber, in addition to the fifteen per cent first payment required on the land."

By §. 6290, "any sale made by mistake, or not in accordance with law, or obtained by fraud, shall be void and the certificate issued thereon shall be of no effect; and the holder of such certificate shall be required to surrender the same to the auditor, who, except in cases of fraud on the part of the purchaser, shall cause the money paid on such sale to be refunded to the holder."

There is no occasion for more than mere reference to the evidence sustaining the finding as to the presence of merchantable timber in substantial quantity on the lands at the time of sale. The testimony for the state was strengthened by the introduction in evidence of cross-sections of trees recently cut on the land. The growth rings tell their own story and well corroborate the conclusion that the trees were of merchantable size and quality when the appraisals were made. The argument of facts for defendant has been considered far enough to bring us to the conclusion that we cannot interfere with the decision below on the issues of fact.

With the fact established that to the extent indicated the land was timber-bearing at the time of appraisal and sale, there is no escape from the statutory nullification of the sales and the certificates evidencing them. The sales were simply "void" and the certificates "of no effect." That ends the matter. In the face of such a statutory denunciation, defendant appeals in vain to equitable principles, of estoppel and the like, whereby it is sought to impose upon the state a bar to a judicial cancelation of the certificates.

There is nothing in our decisions nor in those elsewhere to justify denying the state the relief it asks. In view of the statute and its inescapable nullification of the certificates, there is no occasion to discuss the distinction there is between the rights of the state within the domain of its sovereignty and its somewhat diminished rights as a mere proprietor. In State v. Horr, 165 Minn. 1, 205 N. W. 444, the state was seeking to avoid, after long delay, a compromise settlement which it had made of litigation involving timber lands. Plain principles of estoppel were properly invoked to deny it relief. In the situation there presented it had no more right, no statute so requiring, to avoid its contract than any citizen occupying a similar proprietary and contractual status. A very different situation is presented here. The state holds the school lands in trust. The disposition of them by officials acting as agents of the state is regulated carefully and hedged by statute with the restrictions already noted. Obedience is required of everyone; and enforcement the simple duty of the state officers concerned and the courts.

It should be noted in passing that the state auditor and the attorney general instituted this suit promptly after the discovery by the former that the sales had been made in plain violation of law. The original purchasers and their assignee, the defendant, may be acquitted of fraudulent intent. The fact would remain, and it would be fatal to defendant's case, that the sales were made in plain violation of law and were in consequence void ab initio. The utmost to which defendant is entitled is a return of the purchase price (under G. S. 1923 [1 Mason, 1927] § 6290) and that is secured by the decision below.

Order affirmed.