STATE v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

No. 31,216.

September 10, 1937.

[1]Reported in 274 N. W. 828, 275 N. W. 854.

584

*William S. Ervin,* Attorney General, and *Harry W. Oehler,* Assistant Attorney General, for the State.

*Doherty, Rumble, Butler, Sullivan & Mitchell, R. C. Beckett, Charles· A. Helsell, V. W. Foster,* and *E. C. Craig,* for respondent.

STONE, JUSTICE.

The state sues defendant for a five per cent gross earnings tax on income from freight car *per diem* rentals for a period of eight years,

1922 to 1929, inclusive. The amount claimed was $89,724.36. The state got judgment for $12,866.50, from which it appeals.

1 Mason Minn. St. 1927, § 2246, provides:

"Every railroad company owning or operating any line of railroad situated within or partly within this state, shall, * * * pay * * * in lieu of all taxes, upon all property within this state owned or operated for railway purposes, by such company, including equipment, appurtenances, appendages and franchises thereof, a sum of money equal to five per cent of the gross earnings derived from the operation of such line of railway within this state."

Under § 2247 "gross earnings" mean "all earnings on business beginning and ending within the state, and a proportion, based upon the proportion of the mileage within the state to the entire mileage over which such business is done, of earnings, on all interstate business passing through, into or out of the state."

Under the rule of State v. Minnesota & International Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, only the amount received by a railroad company operating in Minnesota, for use of its cars, in excess of what it pays for the use of cars of other companies, is included in taxable gross earnings. In practice, accounts are kept between the railroad companies and system balances struck and settled monthly. Because Minnesota can tax no property beyond its own borders and because our gross earnings tax is a levy in lieu of all others on the Minnesota property of railroads operating here (1 Mason Minn. St. 1927, § 2246), the incidence of the tax on car rentals is limited by the rule of State v. G. N. Ry. Co. 163 Minn. 88, 203 N. W. 453. That rule is this: In order to determine whether a credit balance for car rentals is to constitute gross earnings of the creditor road taxable in Minnesota, "all rentals derived from the use of the cars by companies operating no lines within the state must be excluded, and no more included of rentals from foreign companies extending into the state than the proportion earned from use within the state" of the creditor's cars.

It is of the theory of the case, implicit in the record, the decision below, and all argument here that, where interstate apportionment

of car rentals is needful, it is to be made on the basis of "loaded freight car mileage" (for brevity to be hereinafter indicated merely as mileage). On that basis, therefore, we consider and decide the case.

Defendant is a foreign railroad corporation organized under the laws of Illinois. Since 1904 it has operated, as lessee of the Dubuque & Sioux City Railroad, some 30.15 miles of trackage in Minnesota. Defendant has exchanged freight cars with other roads operating within and without Minnesota. Pursuant to the universal contract among all roads in the United States, the using road is charged one dollar per day per car while in its possession. During the involved eight years, defendant had credits in its favor for *per diem* use of its cars by other railroads amounting to $17,427,-861.79 and debits in the sum of $14,924,508.63.

The Minnesota Tax Commission had promulgated rules and furnished printed forms for returns. The rules incorporated that of State v. Minnesota & International Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426, together with the following:

"NOTE—You are to report to the State of Minnesota for taxation purposes, (a) the credit balance, if any, on freight equipment used in transportation service and interchanged with foreign roads on the per diem or mileage basis. Minnesota proportion of said credit balance to be computed by applying the percentage that the average revenue freight car mileage in Minnesota bears to the total average revenue freight car mileage of the entire line during the calendar year."

Made as so required, defendant duly filed returns for every year in controversy. All were accepted by the state, and defendant promptly paid the tax computed thereon. (Those returns used what is now referred to as "defendant's Formula." Defendant modestly disclaims its authorship and refers to it as the state's old formula.)

In 1933 the Minnesota Tax Commission adopted a new theory. In the meantime, in the language of Judge Michael: "The defendant's records which would show the number of days its freight cars were in possession of other Minnesota roads, in Minnesota during

said eight-year period, were, pursuant to the rules of the Interstate Commerce Commission, destroyed by defendant before this controversy arose, so that the number of car days to be apportioned to Minnesota cannot be determined to a mathematical certainty." That would be impossible in any event because the best of practicable records would seldom if ever disclose just when or where a freight car crossed a state line. The most practicably possible is a record, approximately accurate, of the time freight cars are in use by lines other than the owner.

Upon the state's new formula this suit was based. It ignored the necessity for first getting system balances. Any credit to defendant, although on the system balance more than offset and defendant indebted to the other road, was sought to be taxed. By so much there was attempt to tax something not an earning. See State v. Minnesota & International Ry. Co. 106 Minn. 176, 118 N. W. 679, 1007, 16 Ann. Cas. 426. That doubtless explains why this new formula has been frankly abandoned by the state.

"Using road" is a self-defining phrase. The "reporting road" is the one making the returns of taxable gross earnings. In the case of the latter's debit balances for car rentals, it is both the using and reporting road. Defendant's mileage in Minnesota is taken as .11 of one per centum of that of its entire system. The application, for present purposes, of that percentage to its own net system credit balances is indefensible for the simple reason that it helps not at all in ascertaining the amount of car rentals earned by defendant's cars in use by other roads in Minnesota. Plainly, for that purpose, the factor of allocation must be the extent of use of the cars in Minnesota. The reporting or owning road's Minnesota proportion of its whole mileage is in consequence irrelevant; and the Minnesota proportion of the using road's determinative. Because the so-called defendant's formula used the former, erroneous ratio (that of the reporting road), it was properly rejected below.

Judge Michael used a method of his own. Between the defendant and all other lines he first struck one balance for the eight years (by deducting total debits from total credits), to which, for the purpose of determining the Minnesota proportion, he applied the

*average* percentage (10.39) that all of the using roads' mileage in Minnesota bears to their total mileage. The Minnesota proportion of defendant's gross credits for the eight years ($17,427,861.79) was $1,811,181.03 or 10.39 per cent of the whole. That rate was taken as indicating the extent of the Minnesota use of defendant's cars by other lines for all the years. *The figures for each system and year were not made or taken separately.*

That method worked out as follows:

Defendant's total credits for the 8 years.......$17,427,861
Defendant's total debits for the 8 years....... 14,924,508

$ 2,503,353

Taking the credit balance of $2,503,353 as defendant's system earnings from car rentals, and 10.39 per cent thereof as allocable to Minnesota, gives the sum of $260,088. One more subtraction was made, .11 per cent thereof, or $2,753, making the net sum subjected to tax by the decision below $257,350.

The last allowance was fixed by the fact that only .11 per cent of defendant's mileage is in Minnesota. It was erroneous, we hold, because defendant had already been given credit for all debit balances, *i. e.*, for the sums it had paid other lines for the use of cars in and out of Minnesota. The additional and final .11 per cent allowance of $2,753 was, *pro tanto,* a duplication of one already made.

In the formula adopted below there is another more serious and pervasive error. Its use of the average percentage for the 21 roads, other than defendant, is erroneous for formulary purposes in this. Only the user's Minnesota proportion of its own mileage is applicable to rentals it pays in order to allocate a proper portion of the latter to Minnesota. But the use of one average Minnesota proportion for all 21 lines makes the multiplier the user's Minnesota mileage in combination with that of all the other lines. *Pro tanto,* the small Minnesota ratios of the mileage of some lines is applied to the large credit balances due from other lines with a much larger Minnesota mileage. To illustrate. In 1922 the Chicago, Great

Western Railway, with a Minnesota mileage of 13.06 per cent of its total, owed defendant a credit balance of $88.26. For the same year, the Minneapolis, Northfield & Southern Railway, with 100 per cent of its mileage in Minnesota, owed defendant a similar balance of $1,666.10. All of the latter was earned in Minnesota. But if the Minnesota average rate of local mileage of the two roads (13.06 plus 100), 56.53 per cent, is applied, the credit to this state is cut almost in half. There is a corresponding increase of the portion of the small Chicago, Great Western balance allocable to Minnesota. The illustration shows the fallacy which condemns any method based upon an average rate per centum of Minnesota use by all the other roads.

Moreover, annually some roads are creditors of defendant. It owes them for car rentals to which balances is to be applied only the user's (its own) Minnesota mileage ratio. But if one average for all lines is taken, an assumed Minnesota use by defendant's creditors is included although they have no such use at all for the year in question. The general average per centum, as used by the court, is a constant factor. Its use ignores the factual lack of relation between it, as the multiplier, and the total figures of all the lines used as the multiplicand. There simply is no basis for allowing the Canadian National Railway's mileage ratio of .01 per cent any potency in reducing the much larger Minnesota ratios of all the other roads. Yet that is what happens if the ratios are independently averaged and the result applied as multiplier to the total credits (of all lines) due defendant. In allocating to Minnesota its proper proportion thereof, the figures for each road must be computed separately—its own balance used as multiplicand, and its own Minnesota proportion, in rate per centum, as the multiplier.

Using on their total car rental debt to defendant an average Minnesota mileage ratio for all the roads applies a constant arithmetic mean to 21 variants, some of which are extremely so. The arithmetic mean, or average, becomes unrepresentative in proportion to the amount of aberration in its component items. In consequence, when applied as multiplier to any such item, it produces a product out of line with truth in proportion, not only to the

variance from the norm of such item, but also deranged by the influence of the similar variance of the other extreme items used in striking the mean.

What we must somehow determine, as nearly as may be, is the amount of money derived from the use of cars in Minnesota. On that question, what has been paid for such use in other states has no bearing. Hence, in any such computation or formula, defendant should not have credit for the whole of its debit balances. It is entitled only to allowances for the portion of such balances properly chargeable to Minnesota. Defendant is taxable only on rentals for the use in Minnesota of its cars. Therefore, of receipts for allocation to Minnesota, no reductions can properly be made of sums it has paid other lines for the use of their cars outside Minnesota. But the decision below does just that. Having got the Minnesota proportion of all defendant's credit balances, the ruling was that there should then be applied in reduction thereof, in order to get at the sum taxable, the whole of defendant's debit balances, rather than only the proportion thereof chargeable for use of cars in Minnesota. The latter can be computed by using on any such balance, as a multiplier, the Minnesota percentage (.11 per cent) of defendant's mileage. As to its debit balances, defendant was the using line. Hence, the proportion of such use in, and the proportion of the resulting debt chargeable to, Minnesota is equivalent, for the purposes of a formula, to the Minnesota proportion of defendant's mileage.

In this battle of formulae, those already referred to have been eliminated for reasons stated. There is but one other which counsel style the "Burlington Formula." It was not even suggested below until the motion for amended findings or a new trial. The trial judge rightly considered it "a clear attempt on the part of the state to shift its position, from what it assumed in levying the taxes, in its complaint, and maintained throughout the trial." His view was further that the Burlington formula was no part of the record, "and even if it were, there are not sufficient facts and data in evidence to correctly apply it." This last formula, and best of the lot, was not submitted as such during the trial, but, with the exception soon

to be noted, the record does disclose, as will later appear, the "facts and data" to which it may be applied, and that with justice.

We are not trying the case anew. But we are reviewing the record and decision below, and, in the latter, to the extent indicated, we find error that prevents an affirmance. Unless we direct judgment, we must order a new trial, or at least enough of one to furnish adequate basis for the application of what, so far as now appears, is the formula which most fully and with the greatest justice meets the need of the case.

Briefly, the Burlington formula proceeds thus: For each of the eight years, defendant's balances, both debit and credit, with each of the other roads, were struck. The Minnesota proportion of each such credit balance was then reckoned by using thereon as a multiplier the Minnesota per centum of the using line's mileage. The actual figure for each road for each year was so used. The Minnesota proportion of defendant's credit balances so ascertained for each road for each year, the next step was to allocate to Minnesota its portion of defendant's debit balances, which, on the basis of mileage, is .11 per cent of the total. The Minnesota proportions of defendant's debit and credit balances being so computed, the next and simple step was to subtract total debits from total credits and so arrive at the sum taxable in Minnesota for each year.

It is repetition, but probably justifiable in the interest of clarity, to say that as to defendant's debit balances it was the using as well as the reporting line. Because Minnesota should not be charged for what defendant paid for the use of cars in other states, but rather and only with what it paid for their use in this state, the ratio of its Minnesota mileage is applied with obvious propriety to its debit balances to ascertain the portion thereof charged for their use in Minnesota and so to be deducted from the credit balances in order to get finally the sum locally taxable.

On the merits of the case arithmetically, nothing more need be said. Belated as was its presentation to the trial court, the Burlington formula comes nearer to reaching with justice and accuracy the desired result than any of the others. It should be adopted and prevail unless the ingenuity of counsel and accountants achieves

something better. We would order judgment thereon but for the fact that the defendant should have the opportunity by evidence and argument in the trial court to present its own figures and contentions concerning the application to it of the Burlington formula. All the data for its use are in the record now by way of evidence, except possibly those showing the Minnesota percentage of the using line's mileage. Those figures, except for defendant itself, were not presented by evidence. We apprehend that little or no additional evidence will be needed. Counsel should be able to get with certainty, and agree upon, the one set of figures needed and not appearing in the evidence as it stands. To the extent indicated, and to that extent only, there must be a new trial. The figures furnished by the state in aid of its motion for amended findings or a new trial and in argument here indicate that the total tax for the eight years, computed on the Burlington formula, will be $26,414.59. The only objective of the new trial, if one is necessary for that purpose, is to determine the correct amount.

■ There is argument for defendant that, because long ago it paid the taxes for the years in question as then computed by proper officers of the state (including an additional amount omitted from the first payment and later demanded), the state is now estopped to claim any additional sum. There can be no such estoppel for the simple reason that in the imposition of taxes the state acts in its sovereign rather than its proprietary capacity. C. St. P. M. & O. Ry. Co. v. Douglas County, 134 Wis. 197, 114 N. W. 511, 14 L.R.A. (N.S.) 1074; see State v. Horr, 165 Minn. 1, 205 N. W. 444. Had the transaction been in the latter category; that is, had the issues arisen from an ordinary business transaction as distinguished from the functioning of the state as a sovereign, it would be, we assume, a fair target for estoppel under the rule of State v. Horr, 165 Minn. 1, 205 N. W. 444, and State v. Gardiner, 181 Minn. 513, 233 N. W. 16.

There is also argument that because defendant paid the small additional sum omitted from the first payment as above indicated, pursuant to an audit made by representatives of the state, the latter is bound as by an account stated. See State v. Illinois Cent.

R. Co. 246 Ill. 188, 92 N. E. 814. Concerning that it is enough to suggest that an account stated as a defense must be specially pleaded. Board of Co. Commrs. of Mower County v. Smith, 22 Minn. 97. No such defense was pleaded in this case. So we are not required even to consider whether for a tax liability, fixed and imposed by statute, there can be substituted the different obligation of an account stated between officers of the state and a taxpayer.

So far as the decision and judgment below affirm the liability of defendant for the gross earnings tax because of its operation of the involved trackage in Minnesota, they are affirmed. But, for reasons already stated, the judgment in its determination of the amount of the tax is erroneous and to that extent must be reversed with directions for a new trial of that one issue.

So ordered.

UPON APPLICATION FOR REARGUMENT.

On October 22, 1937, the following opinion was filed:

STONE, JUSTICE.

Defendant's petition for rehearing is denied. But because there must be a new trial to the extent indicated in our decision, which is adhered to, it is proper that we should express ourselves on the following points raised by defendant's petition.

Again we are urged to consider the argument that defendant discharged its full liability to the state by paying the taxes as computed by the tax commission and its examiners long before this suit was brought. Without debate as to its soundness, we allow for the purposes of argument defendant's contention that its answer should be construed as having pleaded the defense of account stated. With that assumption, the next thing for consideration is the authority of the Minnesota Tax Commission in the determination and collection of gross earnings taxes. Under 1 Mason Minn. St. 1927, § 2239, "the public examiner, with the approval of the tax commission," has the "power to prescribe * * * a system of gross earnings accounts, * * * provided, that such system shall conform as nearly as practicable with that prescribed * * * by the United States government."

As matter merely of statutory construction, the proviso conforming the state to the federal system of accounting indicates no intention other than one for regulation of the accounts of those subject to gross earnings taxes. That exclusionary effect but confirms the conclusion, that necessarily would follow in any event, that no power is vested in the public examiner or tax commission in any manner to relieve the taxpayer from the fixed obligation to pay the tax imposed by statute.

Absent official power to alter the statutory obligation of the taxpayer, nothing done by the tax commission, its examiners or auditors can create the new obligation of an account stated to qualify that of the taxpayer, or diminish the sum due from it under the law. It is elementary that an account stated creates a new cause of action, independent of the claim or claims which were its original subject matter. Hanley v. Noyes, 35 Minn. 174, 28 N. W. 189; Morse & Littell v. Minton, 101 Iowa, 603, 70 N. W. 691; 1 R. C. L. 212.

We have given further consideration to State v. Illinois Cent. R. Co. 246 Ill. 188, 229, 92 N. E. 814, 833. That case went for the taxpayer upon the ground that in the exercise of the "full power" conferred upon the governor there had been a settlement in the nature of an account stated between him and the taxpayer. The controlling thought was that the issue had already been decided by the chief executive of the state, rather than any inferior officer, in the exercise of the "full power" vested in him by the controlling statute. The presumption was invoked that " 'where a duty is devolved upon the chief executive of the state rather than upon an inferior officer, that it is so because his superior judgment, discretion and sense of responsibility were confided in for a more accurate, faithful and discreet performance than could be relied upon if the duty were devolved upon an officer chosen for inferior duties.' "

The present issue is in no such matrix of law and fact. There has been no final determination by the executive department in the exercise of the "full power" vested in the governor of Illinois and controlling in the case just cited. Here no "full power" has been vested in anybody. The only authority is the one noted, to pre-

scribe a system of accounts. Certainly nothing more need be said to show how plainly the whole question is left for final settlement by the orderly method of adjudication where resort must be had thereto.

What we have said disposes also of the argument that "the tax commission, not this court, has power to prescribe the formula." The tax commission has no power, as matter of accounting or otherwise, to collect taxes under a formula which results in the collection of either less or more than under the law and on the facts is found due from the taxpayer. And we pretend to no ultimate formula-making power. We have only the judicial task of applying the law to the facts, and that we have already done in this case to the best of our present ability.

There is argument, which need not be summarized, that "the tax as sought to be imposed violates" defendant's constitutional rights. In view of the new trial that has been ordered, defendant will have full opportunity to present that argument below and make such record as may be necessary to insure its proper consideration. Nothing said in our decision will be construed as foreclosing any defense on constitutional grounds. But the main point remains that the amount due will be determined on the so-called Burlington formula unless a better one appears.

Rehearing denied.

MR. JUSTICE PETERSON, having been attorney general and counsel below, took no part in the consideration or decision of this case.