In the Matter of the Petition of MESABA AVIATION DIVISION OF HALVORSON OF DULUTH, INCORPORATED, for Relief in Connection with Personal Property Taxes Due and Payable in 1975, Respondent,

v.

### COUNTY OF ITASCA, Appellant.

### No. 47024.

Supreme Court of Minnesota.

Sept. 30, 1977.

---

Knetsch & Bang and James J. Bang, Duluth, for appellant.

Johnson, Fredin, Killen, Thibodeau & Seiler and John N. Nys, Duluth, for respondent.

Heard before PETERSON, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

The County of Itasca appeals from a judgment of the district court discharging personal property taxes assessed against respondent. We reverse.

The facts have been stipulated. Respondent, Mesaba Aviation, is a general aviation company providing scheduled airline service to Grand Rapids, Minnesota. Respondent and the Grand Rapids-Itasca County Airport Commission negotiated the lease of space in a terminal to be built by the commission at the Grand Rapids airport. During the negotiations, respondent inquired whether it would be taxed for renting the property. The county auditor, relying on a written opinion of the county attorney, in-

dicated in a letter to the airport commission that the leasehold would not be taxable. Respondent, acting in reliance on the representation that no tax would be assessed, signed a lease agreement in January 1972.

The county assessor assessed a personal property tax against the leasehold in 1974. Respondent paid the tax and, pursuant to Minn.St. 277.011, petitioned the district court for a refund of $3,133.03. The district court found that the leasehold was taxable, but that the misrepresentation estopped the county from collecting the tax. The only issue presented by this appeal is whether estoppel against the county is proper in these circumstances.

Itasca County argues initially that the county attorney was without authority to offer an opinion on the taxability of the leasehold, and that classification of property for tax purposes is the sole province of the county assessor, who was not consulted during the transaction. See generally, *In re Petition of Summit House Apt. Co. v. County of Henn.*, Minn., 253 N.W.2d 127 (1977). Whether an administrative officer is authorized to make a representation is an important consideration in determining whether the government should be estopped from contesting the accuracy of that representation. See, *Board of Education v. Sand*, 227 Minn. 202, 211, 34 N.W.2d 689, 695 (1948); *Alexander Co. v. City of Owatonna*, 222 Minn. 312, 24 N.W.2d 244 (1946); Berger, *Estoppel Against the Government*, 21 U. of Chi.L.Rev. 680, 686. The district court found that the county attorney had authority to render an opinion concerning the taxability of the leasehold. We agree. Minn.St. 388.05 provides in part: "The county attorney shall * * * give opinions and advice upon the request of the county board or any county officer upon all matters in which the county is or may be

interested, or in relation to the official duties of such board or officer * * *."

In addition to the "authorized act" limitation, this court has long relied on the distinction between sovereign and proprietary activities in determining the applicability of estoppel against the government. In *State v. Horr*, 165 Minn. 1, 4, 205 N.W. 444, 445 (1925), for example, we noted:

"When a state acts in its prerogative of sovereignty, the doctrine of estoppel has no application. Examples include the exercise of police or taxation power. The state is free from its operation only when it would impair an inherent sovereign attribute. This is true only for reasons of public policy.

"When the state steps into an industrial or commercial enterprise, it is subject to the same laws that govern and control individuals."

In the instant case the county wore two hats—one, governmental, and the other, proprietary. The county promotes the tax collector's hat, arguing that the basis of the claimed estoppel was erroneous tax information and that estoppel would bar tax collection. A long line of cases classifies taxation as a sovereign prerogative to which estoppel does not apply.[1] Respondent, promoting the other hat, cites the status of the county as landlord. Such status alone, as the county concedes, may well be proprietary. See, *Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 473, 124 N.W.2d 328, 344 (1963). Well aware of the dichotomy, the district court reasoned thusly:

"The real problem here is if the tax-exemption representation became so intertwined with the proprietary action as to become part of it. * * *

* * * * * *

1. See, *Spratt v. Hatfield*, 267 Minn. 535, 539, 127 N.W.2d 545, 548 (1964): "In the levy and imposition of taxes, the state acts in its sovereign capacity, and hence, in an action for the collection thereof, cannot be subjected to an equitable estoppel." Accord, *State v. Illinois Central R. Co.* 200 Minn. 583, 274 N.W. 828 (1937); *State v. Brooks*, 183 Minn. 251, 236 N.W. 316 (1931); *State v. Bell*, 111 Minn. 295, 126 N.W. 901 (1910); *State v. Foster*, 104 Minn. 408, 116 N.W. 826 (1908); *County of Olmsted v. Barber*, 31 Minn. 256, 17 N.W. 473 (1883); *State v. Horr*, 165 Minn. 1, 4, 205 N.W. 444, 445 (1925) (quoted, *supra*, in text). See, also, *In re Estate of Matteson*, 196 Minn. 417, 265 N.W. 38 (1936).

" * * * Because of the nature of the representations made and because of the subsequent actions of the governmental bodies this Court finds that the governmental bodies were acting in their proprietary capacities in order to obtain a lessee of the premises they had constructed. Since the Court finds that the governmental bodies were acting in a proprietary capacity they are estopped from now disclaiming the representations made to [respondent]."

Although the governmental-proprietary distinction might once have been a progressive test of the proper circumstances in which to estop the government,[2] we no longer find it a useful tool for that purpose. The distinction is difficult to apply and is to some extent misleading. The foundation of estoppel is justice,[3] and an examination of the character of the activity engaged in by the government is not necessarily an examination of the equities presented a court. The governmental-proprietary distinction, however, does reflect a relevant concern: The danger that estoppel will hinder government and frustrate public policy. The problem is that the distinction is not sufficiently calibrated to implement that concern in every situation. Compare, *Sullivan v. Credit River Township*, 299 Minn. 170, 217 N.W.2d 502 (1974), with *W. H. Barber Co. v. City of Minneapolis*, 227 Minn. 77, 34 N.W.2d 710 (1948). Thus, the instant inquiry should not be whether the county's actions may be characterized as governmental or proprietary. Instead, the equities of the circumstances must be examined and the government estopped if justice so requires, weighing in that determination the public interest frustrated by the estoppel. In adopting this position, we join the recent trend of decisions.[4] We do not envision that estoppel will be freely applied against the government. *Local Gov't Inf. Systems v. Village of New Hope*, Minn., 248 N.W.2d 316, 321 (1976). But if justice demands, estoppel can be applied against the government even when it acted in a sovereign capacity if the equities advanced by the individual are sufficiently great.

Here, respondent relied on the tax advice of county officers to become their tenant. Reliance on conduct later wished to be renounced is a necessary element of equitable estoppel, *Lampert Yards v. Thompson-Wetterling Const. & Realty*, 302 Minn. 83, 89, 223 N.W.2d 418, 422 (1974), but this factor alone is not determinative of a special equity. It is the county's dual role as advisor and adversary in the negotiations that appears unfair. There is no evidence, however, that the county officers culpably misrepresented respondent's future tax liability in order to gain a tenant. Indeed, upon learning that taxes were being levied, the county officers agreed to cancel the original lease to avoid those tax consequences. Thus, the tax-exempt status of the original leasehold appears to have been a mutual mistake.

However, the public interest may override the equity established by reliance on an opinion of the county attorney acting within his authority. *Board of County Commrs. v. Dickey*, 86 Minn. 331, 90 N.W. 775 (1902). The public interest involved here is the collection of taxes. Because of the complexity of the statutory tax scheme and the fact that extensive calculations are involved, there exists a large possibility that governmental officials may give erroneous advice. Effective tax collection thus might well demand a substantial offsetting equity before the government is held to its erroneous tax advice. See cases cited in footnote 1, *supra*. Nevertheless, if a specific representation is authoritatively made to

---

2. See, 2 Davis, Administrative Law Treatise, § 17.01.

3. *Village of Wells v. Layne-Minnesota Co.* 240 Minn. 132, 141, 60 N.W.2d 621, 626 (1953).

4. See, *United States v. Lazy FC Ranch*, 481 F.2d 985 (9 Cir. 1973); *City of Long Beach v.*

*Mansell*, 3 Cal.3d 462, 91 Cal.Rptr. 23, 476 P.2d 423 (1970); *Shafer v. State*, 83 Wash.2d 618, 521 P.2d 736 (1974). See, also, 2 Davis, Administrative Law Treatise, §§ 17.01 to 17.06; Comment, 46 U. of Colo.L.Rev. 433; Annotation, 27 A.L.R.Fed. 702.

and invites reliance by a taxpayer and the taxpayer's consequent change of position makes it inequitable to retract the representation, estoppel may lie.[5]

We do not have enough facts about the circumstances of this transaction to judge whether respondent suffered a hardship by entering the lease. It is true that respondent's rent has been effectively raised by imposition of the tax. But if respondent had agreed to a higher rent in view of the supposed tax exemption, justice might well have been accommodated had respondent sued to recover that portion of its rental payments. Respondent has not established sufficient equity, however, to estop the county from collecting the personal property tax for the year 1974, due and payable in 1975, and consequently respondent may not recover the taxes paid.

Reversed.

5. See, *Johnson v. Oregon State Tax Comm.*, 248 Or. 460, 435 P.2d 302 (1967); *Libby, McNeill & Libby v. Wisconsin Dept. of Taxation,* 260 Wis. 551, 51 N.W.2d 796 (1952); *Schuster v. Commissioner,* 312 F.2d 311 (9 Cir. 1962); Lynn and Gerson, *Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies,* 19 Tax L.Rev. 487; Comment, 46 U. of Colo.L.Rev. 433, 445, note 65.