**Mary Jo BEATY, Relator,**

v.

**MINNESOTA BOARD OF TEACHING, Respondent.**

No. CX–83–1929.

Court of Appeals of Minnesota.

Aug. 21, 1984.

John R. Tunheim, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., Darrell J. Davis, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This is an appeal from the order of the Minnesota Board of Teaching denying appellant's application for licensure as a School Psychologist I. Appellant claims (1) the Board's failure to apply equitable estoppel was an error of law, (2) the Board's decision was arbitrary and capricious, and (3) the Board's decision was not supported by substantial evidence. We reverse and remand.

## FACTS

Appellant has been employed for the past thirteen years as a counselor at the Marshall Middle School in Marshall, Minnesota. She has 20 years of experience in education and is licensed in elementary education, elementary counseling, middle school guidance and counseling, secondary guidance and counseling, and middle school health.

Appellant contacted Mankato State University (Mankato) regarding obtaining school psychologist training and on April 8, 1982, met with Dr. Ralph Kudella, an advisor. Kudella told appellant Mankato's school psychology training program was "pre-approved" and that official approval looked "very promising". Appellant and Dr. Kudella compared the transcript of appellant's coursework to the state licensure requirements and developed a plan for appellant to complete the requirements.

On April 12, 1982, appellant called the State Department of Education and spoke with Kenneth Peatross, Executive Secretary of the Minnesota Board of Teaching (Board). Appellant inquired about the approval status of Mankato's school psychologist program. Peatross responded that St. Cloud State University and Mankato were competing to get approval for the school psychologist program but that Mankato was way ahead of St. Cloud. According to appellant, Peatross also stated he was sure Mankato would get approval for its program. Appellant testified she and Peatross discussed the advisability of taking courses at Moorhead State University rather than Mankato. According to appellant, Peatross stated it would be much easier to go to Mankato since it is closer to Marshall than Moorhead and it was "safe" to take school psychologist courses at Mankato. Peatross testified he does not remember the specifics of the conversation, but it had never been his practice to advise completion of coursework in a program not yet approved.

In the summer of 1982, appellant attended Mankato and completed three of the courses prescribed by Dr. Kudella. During that same summer, Dr. Kudella designed a practicum for appellant. From August, 1982 through January, 1983, appellant com-

pleted the practicum under the direction of Henry Hanck, a licensed School Psychologist I employed by the Marshall School District.

In February of 1983, having completed the courses prescribed by Dr. Kudella, appellant contacted the Department of Education (Department) to obtain application materials for licensure. She was referred to Dr. Thomas Lombard, an Education Program Supervisor with the Department of Education, who informed her Mankato had dropped its plan to develop a school psychologist training program because of funding cutbacks.

On February 8, 1983, appellant requested the Department review her qualifications. Dr. Lombard called appellant after the review and told her she would need to complete an additional six to nine courses to meet the requirements for a School Psychologist I license. Appellant submitted an official application to the Department of Education on February 23, 1983. She informed Peatross she was willing to take the courses required by Dr. Lombard and requested a list specifying the required courses.

On March 7, 1983, George Droubie, Manager of Personnel Licensing and Placement for the Department, sent appellant notice of the denial of her licensing application. The notice evaluated appellant's coursework and identified nine areas of graduate coursework appellant had not completed. Appellant asked the Department to reconsider her application and submitted additional information about her coursework. After reconsideration, Dr. Droubie informed appellant that based on the additional information supplied by her, the Department revised its evaluation of appellant's required coursework and found her work deficient in five subject areas. Appellant enrolled in three of the prescribed courses, but appealed the denial of her licensure, requesting a hearing pursuant to Minn.Stat. §§ 14.57 to 14.63 (1983). On June 22, 1983, Peatross informed appellant that Dr. Droubie's letter of April 21, 1983 was an offer of settlement and since appel-

lant was continuing her appeal, the offer was withdrawn and appellant was required to start over in an approved program.

On June 28, 1983, a hearing was held before hearing examiner Howard L. Kaibel. Following the hearing, the hearing examiner issued findings of fact, conclusions of law and a memorandum recommending that the Board order the Department to issue appellant a School Psychologist I license upon successful completion of the courses in which she was enrolled and the November 1983 Kaufman ABC Workshop.

The hearing examiner found Dr. Droubie's letter of April 21 was not a settlement offer and was admissible evidence. He further found equitable estoppel should be applied to prevent the Board from denying appellant a license after it had advised her to take courses at Mankato and she had complied. Finally, the examiner found the Board has discretionary authority to grant a license to a "qualified" applicant even though the applicant's courses were completed in a program not approved by the Department.

Executive Secretary of the Board Peatross filed exceptions with the Board: The exceptions included proposed findings of fact, conclusions of law and an order.

On October 19, 1983, the Board heard oral arguments. The Board rejected the hearing examiner's findings, conclusions and recommendation and adopted the findings, conclusions and order proposed by the executive secretary. On December 5, 1983, appellant filed a petition for writ of certiorari.

In March 1984, the Department asked appellant to submit information verifying she had completed any of the five required subject areas. Appellant provided information which she contends verifies she completed all five areas. The Department concluded appellant completed only three of the five areas. The Department disputes completion of "Theories of Personality" and "Practicum in School Psychological Service".

## ISSUES

1. Whether the Board's failure to apply equitable estoppel was an error of law?

2. Whether the Board acted arbitrarily or capriciously in denying appellant's application for licensure?

3. Whether the Board's decision denying appellant's application for licensure is supported by substantial evidence?

## ANALYSIS

1. Judicial review of administrative agency decisions is governed by the Minnesota Administrative Procedures Act, Minn. Stat. § 14.69 (1982) which provides:

In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

*Id.*

■ Decisions of administrative agencies enjoy a presumption of correctness "and will be reversed only when they reflect an error of law or when the findings are arbitrary and capricious or are unsupported by substantial evidence." *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 777 (Minn.1981); *see Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). When reviewing questions of law, however, the court is not bound by the agency's decision. *Ekstedt v. Village of New Hope*, 292 Minn. 152, 164, 193 N.W.2d 821, 829 (1972). It is the function of the court in reviewing administrative agency decisions to settle questions of law. *State ex rel. Spurck v. Civil Service Board*, 226 Minn. 240, 248, 32 N.W.2d 574, 580 (1948). Administrative agency decisions which are quasi-judicial in nature are more closely scrutinized than the quasi-legislative decisions which receive an extremely limited review on appeal. *Arvig Telephone Co. v. Northwestern Bell Telephone Co.*, 270 N.W.2d 111, 116 (Minn.1978).

■ 2. Initially, we consider whether the Board's failure to apply equitable estoppel was an error of law. For equitable estoppel, the plaintiff must demonstrate the defendant, through language or conduct, induced the plaintiff to rely, in good faith, on this language or conduct to his injury, detriment or prejudice. *Ridgewood Development Co. v. State*, 294 N.W.2d 288, 292 (Minn.1980).

■ Traditionally, courts relied on the distinction between sovereign and proprietary activities in determining the applicability of estoppel against government agencies. *Mesaba Aviation Division v. County of Itasca*, 258 N.W.2d 877, 879 (Minn.1977). It had been the rule that estoppel was available for use against government's proprietary acts, but not available for use against its sovereign or governmental acts. *See State v. Horr*, 165 Minn. 1, 4, 205 N.W. 444, 445 (1925). In *Mesaba*, the Minnesota Supreme Court abandoned the distinction, stating:

Although the governmental-proprietary distinction might once have been a progressive test of the proper circumstances in which to estop the government, we no longer find it a useful tool for that purpose. The distinction is difficult to apply and is to some extent misleading.

*Mesaba*, 258 N.W.2d at 889 (citations omitted). The court also said:

The governmental-proprietary distinction, however, does reflect a relevant concern: the danger that estoppel will hinder government and frustrate public policy. The problem is that the distinc-

tion is not sufficiently calibrated to implement that concern in every situation. Thus, the instant inquiry should not be whether the county's actions may be characterized as governmental or proprietary. Instead, the equities of the circumstances must be examined and the government estopped if justice so requires, weighing in that determination the public interest frustrated by the estoppel.... We do not envision that estoppel will be freely applied against the government. But if justice demands, estoppel can be applied against the government even when it acted in a sovereign capacity if the equities advanced by the individual are sufficiently great.

*Id.* A balancing test is added to the general requirements of equitable estoppel when the government is sought to be estopped in its sovereign capacity.

 In this matter, appellant spoke with Kenneth Peatross, executive secretary of the Board, before pursuing the courses prescribed by Dr. Kudella. Her conversation with Peatross left her with the definite impression she would be able to fully complete the requirements for School Psychologist I licensure through Mankato. Pursuant to that belief, appellant expended a great deal of time and money completing the courses outlined by Dr. Kudella.

Whether an administrative officer is authorized to make a representation is an important consideration in determining whether the government should be estopped. *Mesaba,* 258 N.W.2d at 879. Peatross is the Executive Secretary of the Board of Teaching. The Board has ultimate licensing authority and Peatross routinely handles licensure matters. Peatross was authorized to recommend a school where one could fulfill the licensure requirements.

3. Equitable estoppel may also arise from communications *regarding appellant's* application for licensure and appeal. In early 1983, Dr. Droubie and Dr. Lombard agreed to review appellant's qualifications to determine whether she might qualify for licensure. In his letter of April 21, 1983,

Dr. Droubie stated appellant could meet the licensure requirements by completing five specific subject areas. Relying on this letter, appellant registered and completed four courses which satisfied three of the five areas. She also supplied a written endorsement certifying that she had completed a fourth requirement.

When appellant did not drop her appeal of the original license denial, the Board sought to characterize Droubie's April 21 letter as an offer of settlement. On June 27, 1983, Peatross informed appellant the offer was revoked and appellant was required to start over in an approved program.

The Board erred by not applying equitable estoppel as the hearing examiner recommended. In reliance on representations made by agents of the Board and Department authorized to make such representations, appellant in good faith expended a great deal of time and money pursuing a School Psychologist I license. The balancing test of *Mesaba* has been met. Applying estoppel against the government in this case will not frustrate any legitimate public purpose, while failing to apply it will result in great hardship to appellant. Justice demands the Board be estopped from not ordering the Department to grant appellant's application for licensure.

 4. The Board's decision denying appellant's licensure is also arbitrary and capricious. A decision of an administrative agency is arbitrary and capricious when the determination represents the agency's will and not its judgment, or when the decision is without evidence to support its conclusion. *Bryan v. Community State Bank of Bloomington,* 285 Minn. 226, 234, 172 N.W.2d 771, 776 (1969).

(a) In his April 21 letter, Dr. Droubie stated appellant could comply with the "Theories of Personalities" requirement if she obtained an endorsement from the chairperson of the psychology department at the University of Minnesota, Duluth (UMD) indicating this requirement had been met. Appellant obtained such an en-

dorsement from Dr. Gum of UMD. The Board, however, now claims the endorsement is inadequate to satisfy the requirement.

(b) The Board also maintains the practicum experience appellant received under Mr. Hanck does not meet the "Practicum in School Psychological Service" requirement because her work was not done under the supervision of a School Psychologist II. The Board cites no rule, however, which requires the practicum be done under a School Psychologist II. Even Minnesota Rule 8700.6310, subpart 4(G)(2) (1983), effective July 1, 1985, will not require supervision by a Level II school psychologist.[1]

In his report, the hearing examiner found that

[a]pplicant's practicum was designed and ultimately supervised by [Dr. Kudella], a competent university professor with a doctorate. It was locally supervised by a currently practicing school psychologist, fully licensed at Level I who was specifically approved by the university professor. Licenses have been issued in the past to applicants whose practicum was supervised locally by level I psychologists. If Mankato had followed through with its accreditation, as planned, there would be no question as to the sufficiency of Applicant's practicum.

(c) Additionally, upon review of appellant's qualifications, the Department advised appellant she could meet the licensure requirements by completing five subject areas. Then shortly before the examiner's hearing, the Board notified appellant this representation was only an offer of settlement which was being withdrawn because appellant continued with her appeal. Appellant had no prior indication that the representation was an offer of settlement. After withdrawing the so-called offer, the Board informed appellant she would have to enroll in an approved program and virtually start over.

(d) We are also troubled by the Board's total disregard for the hearing examiner's report. The hearing examiner found appellant demonstrated good faith reliance on representations made by the Executive Secretary of the Department and she had essentially complied with the requirements for licensure. He recommended appellant be licensed. The Board rejected the hearing examiner's findings without comment. Although agencies are not bound by a hearing examiner's findings, *City of Moorhead v. Minnesota Public Utilities Commission*, 343 N.W.2d 843 (Minn.1984), the hearing examiner's findings should not be taken lightly. When an agency rejects or significantly deviates from the hearing examiner's findings, it should explain, on the record, its reasons for doing so. Failure to do so evidences the agency's desire to exercise its will and not its judgment. A hearing examiner's report and recommendations should not be summarily rejected without reasons.

5. While this matter also presented the issue whether the Board's decision is supported by substantial evidence, in view of the preceding discussion and analysis it is unnecessary to fully discuss this issue.

### DECISION

In denying appellant's application for licensure, the Minnesota Board of Teaching committed an error of law by failing to apply equitable estoppel. The Board's decision represented its will, not its judgment, and is arbitrary and capricious. We reverse and order the Board of Teaching to order the Department of Education to issue a School Psychologist I license to Mary Jo Beaty, appellant.

Reversed and remanded.

---

**1.** Minnesota Rule 8700.6310, subpart 4(G)(2) (1983) states in relevant part:

(2) ... The practicum shall be done on at least a half-time basis, and the principal supervision must be provided by a practicing school psychologist. A currently practicing school psychologist is defined as a fully licensed person working at least half-time in the practice of school psychology or the preparation of school psychologists. Local supervision in a practicum setting may be provided by other psychological personnel.