**BRINK'S, INC., Petitioner,
Respondent (C1–85–673),**

v.

**MINNESOTA TRANSPORTATION REGULATION BOARD, Appellant
(C1–85–673), Respondent (C1–85–950),**

**Ram Security, Inc., Appellant
(C1–85–950).**

**Nos. C1–85–673, C1–85–950.**

Court of Appeals of Minnesota.

Sept. 3, 1985.

Review Denied Nov. 4, 1985.

Robert D. Gisvold, Minneapolis, for Brink's, Inc.

Hubert H. Humphrey III, Atty. Gen., Craig R. Anderson, St. Paul, for Minnesota Transp. Regulation Bd.

Grant J. Merritt, Minneapolis, for Ram Security, Inc.

Heard, considered and decided by POPO-VICH, C.J., and WOZNIAK and SEDG-WICK, JJ.

## OPINION

WOZNIAK, Judge.

The Minnesota Transportation Regulation Board appeals from a district court order reversing a Minnesota Public Utilities Commission order granting Ram Security's petition for irregular route common carrier permit authority to transport coin, currency and other valuables. The Board has succeeded the MPUC as the regulatory authority for intrastate motor carrier transportation matters. It contends substantial evidence supports the decision of its predecessor, the MPUC, that there is a need for Ram to provide irregular route common carrier service for the Federal Reserve Bank of Minneapolis (FED) and that it may in its discretion issue a limited irregular route common carrier permit. We affirm.

### FACTS

Ram is an armored car transportation company. It holds intrastate courier service carrier (CSC) and local cartage carrier (LCC) authority.

The FED makes regular and periodic shipments of coin and currency between the Federal Reserve Bank facilities in Minneapolis and institutions throughout the state. It occasionally ships federal, state and municipal securities. Each area of the state is assigned to a specific route and is served on a specific weekday.

In August 1982, the FED sought bids from armored car carriers for transportation of coin and currency for eight of its routes. Ram was the low bidder on six routes and was awarded a contract to serve the routes beginning November 1, 1982. Two of the routes are within the local cartage zone and are served by Ram under its LCC authority. The remainder are outside of the zone and must be served by Ram under its CSC authority. Each specific route which was set out in the request for bids was incorporated into the contract between Ram and the FED.

Under its CSC authority, Ram may only use vehicles which have manufacturer's nominal rating capacity which does not ex-

ceed one ton. *See* Minn.Stat. § 221.0101, subd. 25. Because of this weight restriction, Ram must operate two or three vehicles on several of its FED routes. Under irregular route common carrier authority, it could use larger vehicles.

When Ram responded to the FED's request for bids, it submitted a bid for service under its CSC authority and a bid for service under irregular route common carrier permit authority. The bid under the irregular route authority was approximately 20% lower than the bid under the CSC authority.

Ram petitioned for irregular route common carrier authority to transport money, coin, currency, checks, gold, silver, bullion, precious metals and stones, jewelry, stamps, negotiable and non-negotiable instruments and securities, stocks, bonds and other rare and valuable documents of unusually high value between all points in Minnesota. Loomis Armored Car Service, Inc. and Brink's filed timely petitions to intervene and protest. Loomis holds a contract carrier (CC) permit which authorizes it to serve 14 financial institutions, including the FED. It also holds an irregular route common carrier permit. Loomis served the institutions on the FED's structured routes under its CC authority. It uses its irregular route common carrier authority only for serving new or short-term customers. If these new customers become long-term or regular, Loomis seeks CC authority to serve them. Brink's holds a CC permit to serve a number of financial institutions, including the FED. It also holds irregular route common carrier, LCC and CSC authority to transport coin, currency and negotiable instruments. Prior to November 1, 1982, Loomis and Brink's served the routes now served by Ram.

A contested case hearing was held. The FED supported Ram's petition because it prefers to be served under Ram's lower irregular tariff rather than under its CSC tariff.

The administrative law judge concluded that Ram is fit and able to provide service and its vehicles meet safety requirements,

but that it cannot legally provide the services required by the FED under an irregular route common carrier permit because the FED requires Ram to operate on specific routes on a specific time schedule. He therefore recommended that Ram's petition be denied.

The MPUC found that the nature and frequency of the need for Ram's services is "very limited." Nonetheless, it concluded that the proposed service to the FED supports the grant of an irregular route common carrier permit. Specifically, the MPUC stated that Ram's current service to the FED is inefficient because of the CSC weight limitation, and the grant of irregular route common carrier authority "recognizes the public need for enhanced competition in the area of currency transportation." By a June 29, 1983 order, the MPUC authorized Ram to transport currency, coin, and securities for the FED under an irregular route common carrier permit.

Brink's appealed to the district court. The court reversed the MPUC reasoning that the MPUC could not issue an irregular route common carrier permit because the service proposed by Ram is not irregular route common carrier service, but fixed route service with calls at fixed points on the same day of each week. It concluded that the commission had "no evidentiary basis for the finding of need for service in the area and made none." It reversed the MPUC order.

## ISSUE

May the MPUC grant an irregular route common carrier permit to Ram based upon the FED's need for service?

## ANALYSIS

■ Judicial review of an administrative agency decision in a contested case is governed by the Administrative Procedures Act, Minn.Stat. §§ 14.63–.69 (1984). This court may reverse the agency's decision if it is unsupported by substantial evidence in view of the entire record or if it is affected

by other error of law. Minn.Stat. § 14.-69(d) and (e). We independently review the agency's decision without according any special deference to the district court's review. *See Minnesota Power & Light Company v. Minnesota Public Utilities Commission*, 342 N.W.2d 324 (Minn.1983).

Minn.Stat. § 221.121, subd. 1 (1982) governs the issuance of an irregular route common carrier permit. Under this statute, the board must issue a permit if, after notice and a hearing, it finds four requirements have been met. One of the requirements is a showing by petitioner "that the area to be served has the need for the transportation services requested in the petition * * *." *Id.* Ram petitioned for irregular route common carrier authority to transport money, currency, coin and a number of other valuables between all points in Minnesota. "Irregular route common carrier":

> means any person who holds himself out to the public as willing to undertake to transport property from place to place over highways for hire but *who does not operate between fixed termini or over a regular route or on regular time schedules.*

Minn.Stat. § 221.011, subd. 11 (1982) (emphasis added). The MPUC found that the FED:

> requires the services of armored vehicles to effect the described transportation of coin, currency and federal, state and municipal securities. The various areas of the state are assigned to routes which are served on a weekly basis.

Finding 11. The MPUC also found that:

> Each route as structured by the Federal Reserve Bank has a specified day of the week on which deliveries are to be made. This request for proposal (i.e., requesting bids) has been incorporated into the service contract between Ram and the Bank. Page 2 of the request sets out the requirement that currency, coins and other freight be picked up between the hours of 1:00–3:00 p.m. at the Bank in down-

town Minneapolis on the day preceding the run. Exhibit 1 attached to the request for proposal sets out the order in which the customers, or depository institutions, are to be served on the following day. Again, page 2 of the request for proposal sets out the hours between 7:45–11:00 a.m. of the third day, or the day after the actual run, as the time when the carrier must deliver all return shipments to the Federal Reserve Bank.

Finding 18. The finding continues by describing the Brainerd route and notes that: "[o]ther routes have similar schedules with different pickup days."

■ Even though the MPUC found that the FED requires a provider to operate on a specific route at a specific time, it concluded Ram provided sufficient evidence to support "the need for a limited IRCC authority to serve the FED." By definition, an irregular route common carrier is one which does not operate over a regular route or on a regular time schedule. The FED requires regularly-scheduled service over a set route. Therefore, Ram cannot support its petition for irregular route common carrier authority by relying on the FED's need for transportation services. The evidence of the FED's need for service is not only insufficient to support Ram's application, but it supports a contrary result. We conclude that the district court's reasoning was sound and its decision correct.

The Board argues that the MPUC correctly concluded that Ram's proposed services would not be over designated routes on a fixed time schedule. The MPUC concluded that the proposed transportation will not be between fixed termini because both member and nonmember depository institutions by law have equal access to the transportation services of the FED and there can be no certainty as to the number of depository institutions to be served by the FED. While both member and nonmember institutions may use FED's services, there are no findings which support a

conclusion that the proposed transportation will not be between fixed termini. MPUC's relevant finding number 18 is to the contrary—the FED has contracted with Ram for the provision of services over specific routes and on specific time schedules.

The Board acknowledges that Ram petitioned for irregular route common carrier authority so it could provide lower cost services to the FED and argues that the district court erred by concluding that a showing of lower costs was legally insufficient to support a finding that the proposed service was needed. The Board misconstrues the district court's holding. While the district court did discuss the relationship between need for services and the offering of services at a lower cost, it only did so after it held that: "the service proposed by petitioner is a regular route service. Therefore the commissioner acted contrary to law in issuing an irregular route permit." Since we agree with the district court that the MPUC could not issue an irregular route common carrier permit based on the proposed service, a discussion of the relationship between lower cost and need is unnecessary. We only note that lower rates per se are not indicative of public need.

Finally, the Board argues that *Brink's, Inc., v. Minnesota Public Utilities Commission*, 355 N.W.2d 446 (Minn.Ct.App. 1984), mandates affirmance of the MPUC's decision. The district court concluded that *Brink's* did not address the issue which is determinative in this case. We agree. While the facts in *Brink's* are similar to the facts in this case, the issue raised is significantly different and dictates a different result.

### DECISION

Ram did not meet its burden of showing that there is a need for irregular route common carrier authority to transfer coin, currency and securities for the FED.

Affirmed.