**In the Matter of the Petition of BURNHAM SERVICE CORP., 5000 Burnham Blvd., Columbus, GA 31907, for Contract Carrier Permit Authority.**

**No. C5–86–86.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Stanley C. Olsen, Jr., Edina, for relator Burnham Service Corp.

Andrew R. Clark, Minneapolis, for respondent Berger Transfer & Storage, Inc.

Hubert H. Humphrey, III, Atty. Gen., Craig Anderson, Sp. Asst. Atty. Gen., St. Paul, for respondent M.T.R.B.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

Relator Burnham Service Corporation appeals by writ of certiorari from a final decision of the Minnesota Transportation Board (MTRB) refusing to grant it contract carrier authority under Minn.Stat. § 221.-121, subd. 1 (1984). We affirm.

## FACTS

In late 1984, International Business Machines (IBM) requested bids from contract carriers to serve its interstate and intrastate transportation needs in Minnesota. Burnham, a Georgia-based corporation with interstate but not Minnesota intrastate authority, was awarded the three-year contract solely because its rates were the lowest. Identical service had previously been provided to IBM by respondent Berger Transfer & Storage, Inc., a carrier with Minnesota intrastate permit authority.

Under the contract, Burnham was required to obtain a warehouse and terminal facility in Burnsville, Minnesota, and install a security system and a specialized computer system to track all IBM shipments. The majority of shipments received at the Burnsville facility are interstate in character; only about one percent of the total shipments received are from IBM's Rochester, Minnesota, plant and are destined for intrastate customers. Since June 1985, when Berger's contract with IBM expired, Burnham has been servicing IBM's interstate needs; it services IBM's intrastate needs by leasing its vehicles to a carrier that possesses the appropriate authority.

With IBM's support, Burnham filed this petition to obtain the necessary intrastate contract carrier authority. The matter was referred to respondent MTRB and became a contested case proceeding when a protest was filed by Berger. After a hearing at which testimony was taken, an administrative law judge (ALJ) issued findings of fact, conclusions of law, and a recommendation that Burnham's petition be granted. Exceptions to the ALJ's recommendation were filed by Berger, and oral arguments were held before the MTRB. The MTRB subsequently issued a decision adopting the ALJ's findings of fact, but rejecting his conclusions and denying the petition. When Burnham's petition to reconsider was denied, the MTRB's decision became final. This court granted Burnham's writ of certiorari.

## ISSUE

Should this court reverse the MTRB's decision that lower rates alone do not establish need under Minn.Stat. § 221.121, subd. 1?

## DISCUSSION

This court's scope of review of the MTRB's decision is limited by Minn.Stat. § 14.69 (1984):

In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

\* \* \* \* \* \*

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

*Id.* "[D]ecisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by the courts to the agencies' expertise and their special knowledge in the field of their technical training, education and experience." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

Contract carriers shipping intrastate in Minnesota are regulated by the MTRB and are required to obtain a permit:

The board, after notice to interested parties and a hearing, shall issue the permit upon compliance with the laws and rules relating to it, if it finds \* \* \* *that the area to be served has a need for the transportation services requested in the petition, and that existing permit and certified carriers in the area to be served have failed to demonstrate that they offer sufficient transportation services to meet fully and adequately those needs \* \* \*.*

Minn.Stat. § 221.121, subd. 1 (emphasis added).

After making numerous findings of fact which were subsequently adopted by the MTRB in their entirety, the ALJ concluded that Burnham "has established that IBM has a need for the services under the conditions which [Burnham] proposes to render such services." The MTRB rejected the ALJ's recommendation and concluded:

4. Petitioner [Burnham] has failed to establish a need for its proposed service to IBM. IBM is presently obtaining intrastate transportation services from its Rochester plant through an authorized carrier which leases vehicles from petitioner. A grant of intrastate contract carrier permit authority to petitioner would obviate the need for petitioner to enter into this lease arrangement in order to provide intrastate service to IBM. This might somewhat lower petitioner's cost of servicing IBM, yet the record does not establish that petitioner would pass these cost savings along to IBM. Accordingly, petitioner has not shown that IBM itself would derive any advantage from a grant of this petition.

In concluding that petitioner had shown a need for its proposed service, the [ALJ] relied solely on petitioner's willingness to offer at lower rates service identical to that previously provided by [Berger]. However, petitioner has not demonstrated a connection between these lower rates and a need for it to obtain operating authority. If this petition is denied, petitioner will continue to arrange for provision of intrastate motor carrier service to IBM under its equipment lease on financial terms agreed to between petitioner and IBM. Furthermore, even if a grant of authority to petitioner would lower IBM's rates, the Board would not be able to conclude on this record that need had been established. While an applicant's proposed rate advantage is relevant to a determination of the need issue, "lower rates per se are not indicative of public need." *Brinks, Inc. v. Minnesota Transportation Regulation Board,* 373 N.W.2d 632, 636 (Minn.App.1985).

Burnham argues that, contrary to the MTRB's decision, it has established a need for its proposed services to IBM.

■ Burnham contends it demonstrated that IBM had a need for the lowest possible rate because IBM indicated that it desired to obtain "the best service * * * at the most economical cost." Burnham further contends that it demonstrated existing carriers are unable to meet IBM's need adequately, as evidenced by Berger's admission that it could not compete with such lower rates due to its higher union labor costs. While rate advantage is a relevant factor in considering whether to grant a permit, it alone is not determinative of the need issue. *See Brinks, Inc. v. Minnesota Public Utilities Commission*, 355 N.W.2d 446, 451 (Minn.Ct.App.1984). In this case it is not disputed that existing carriers were providing IBM with adequate service prior to IBM's award of the contract to Burnham; nor does the record suggest that IBM could no longer afford the rates those carriers were charging.

To urge that lower rates alone establish a public need for a particular carrier's service is essentially a call for deregulation; an offer of lower rates arguably implies a need for more or enhanced competition among carriers. Under the present statutory scheme for granting a permit, however, such concerns are properly the province of the legislative branch and not the judicial:

> The Minnesota State Legislature has not deregulated motor carrier transportation to the point where a promise of cheaper rates, standing alone, is grounds for granting an application for a motor carrier permit.

*Brinks, Inc. v. Minnesota Department of Public Service*, No. 463722 (Minn.Dist.Ct. Mar. 5, 1985). While the wisdom of requiring an intrastate contract carrier to obtain a permit at all may well be dubious, such questions are not for the judiciary to decide.

■ Burnham argues that it has also established a need for its services because it is providing unique services to IBM by leasing a warehouse, installing a computer system, and providing computer product tracking, consolidation of goods, inventory services and audit reports. Identical services, however, were being provided by Berger. Burnham also emphasizes that denial of this application has created significant problems, including the need to lease equipment and drivers to authorized Minnesota intrastate carriers, the reliance on a burdensome dual administrative and billing system, use of a nonapproved and computer-less carrier, and the inability to commingle intrastate and interstate shipments. These problems, however, do not establish need and were created by IBM's knowing grant of a contract to a carrier without intrastate authority.

■ IBM candidly admits that it let the bid to a non-licensed carrier that proceeded to establish methods and install equipment which are now claimed to demonstrate that need exists for the licensing of this carrier. Reliance on such after-the-fact services is deceptive; Burnham cannot rely on factors resulting after the letting of the contract to establish IBM's need for its services. Such logic would effectively delegate to the shipper the authority to establish need merely by choosing the carrier able to provide adequate service at the lowest rates. The MTRB would have little discretion in deciding whether to grant a permit; its authority would become purely ministerial.

■ Finally, Burnham contends that Berger does not have standing to protest its application. Neither the ALJ nor the MTRB expressly addressed the issue, whether properly raised or not. The argument appears relatively meritless. Section 221.121, subd. 1, requires the MTRB to issue notice to "interested parties" and to conduct contested case proceedings when a timely protest is received by "any person." Berger was served notice of the application and filed a timely protest. Although it no longer holds a contract with IBM, it continues to have the contract carrier authority to serve IBM and has standing to contest Burnham's application in this case.

## DECISION

The decision of the MTRB is affirmed in all respects.

**Writ discharged.**

POPOVICH, C.J., dissents.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and would reverse for the following reasons:

1. The MTRB refers, in its conclusions, to the fact the ALJ relied solely on "petitioner's willingness to offer at lower rates services identical to that previously provided by [Berger]." This distinction of rate difference is significant. In terms of what IBM has to pay for the service, Burnham offers better value than Berger or any of the other bidders. Therefore, the fact there is a rate difference between Burnham and Berger goes much deeper than a mere comparison of the actual figures.

The MTRB cites *Brinks, Inc. v. Minnesota Transportation Regulation Board*, 373 N.W.2d 632, 636 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Nov. 4, 1985), wherein we said, "lower rates per se are not indicative of public need." Immediately preceding this sentence we said, "Since we agree with the district court that the MPUC could not issue an irregular route common carrier permit based on the proposed service, a discussion of the relationship between lower cost and need is unnecessary." Clearly the court had not analyzed the issue of lower rates because Brinks proposed to perform regular route service and an irregular route permit was issued which was contrary to the law. Consequently, the *Brinks* quotation relied upon by the MTRB and the majority is pure dictum.

The question of rate and its implications is summed up in ALJ Richard DeLong's Conclusion 5:

> Protestant has failed to demonstrate that it can perform the required services under terms as favorable to IBM as the terms under which Petitioner proposes to operate.

Berger admits it cannot offer the same rates as Burnham because of higher labor costs. The question thus arises: Should IBM be forced to pay higher rates for service because of Berger's inability to run a cost-efficient service? The denial of Burnham's petition will force IBM to use transportation services that are inadequate.

2. The MTRB adopted the findings of fact of the administrative law judge, yet reached a totally different conclusion. While an agency is not bound by an administrative law judge's findings and conclusions, they should not, however, be taken lightly. If an agency rejects or significantly deviates from the recommendations, it should explain on the record its reasons for doing so. *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 472 (Minn.Ct. App.1984). *Beaty* held that failure of the agency to adopt the ALJ's *findings* without adequate explanation evidences the agency's desire to exercise its will and not its judgment. The instant matter is more serious because the agency adopted the findings but rejected the conclusions without a sufficient substantial explanation in my opinion.