In the Matter of the Joint Petition of **FRITZ TRUCKING, INC. (Vernon O. Fritz), as Transferor, and M.V. Fritz Trucking, Inc. (Michael V. Fritz, Todd Ammerman and Gerald W. Ammerman), as Transferee, for an Order Authorizing and Approving the Transfer of Irregular Route Common Carrier Permit Held by the Transferor.**

No. CX–86–2173.

Court of Appeals of Minnesota.

June 9, 1987.
Review Denied July 31, 1987.

Ronald L. Snelling, Stanley C. Olsen, Jr., Olsen; Snelling & Christensen, Edina, for relators.

Hubert H. Humphrey, III, Atty. Gen., Allen E. Giles, Sp. Asst. Atty. Gen., St. Paul, for Transportation Regulation Bd.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

The Minnesota Transportation Regulation Board (the Board) rescinded a permit transfer when it was informed that the transferee's, M.V. Fritz Trucking, Inc., officers were "figureheads," and the stock was actually held by two individuals who also owned all the stock in a second trucking operation. The transferor and transferee appeal. We affirm.

## FACTS

On March 31, 1986 the Board received a joint petition from Fritz Trucking, Inc. and a new entity, M.V. Fritz Trucking, Inc. (the joint petitioners), requesting the transfer of Fritz's irregular route common carrier permit to M.V. Fritz Trucking. On June 4th, the Board transferred the permit to M.V. Fritz Trucking.

Later that month the Board was informed by the joint petitioners' counsel that the order granting transfer incorrectly listed M.V. Fritz's corporate officers as shareholders. The corporation's stock was held not by M.V. Fritz, Todd or Gerald Ammerman, but by John Dawson (60%) and Donald Kloster (40%). The Board then ascertained that Dawson and Kloster were also the owners of MATS, Inc., another trucking operation. The Board ordered petitioners to show cause why the transfer of the permit, which gave Dawson and Klost-

er control of two permits, did not violate Minn.Stat. § 221.151.

The permit transfer was canceled October 21, 1986.

The Board concludes that by "piercing the corporate veil" of the Transferee corporation [M.V. Fritz Trucking] * * * that the Transferee corporation was formed to circumvent the provisions of Minn. Stats. Chapter 221.151, and that the order issued June 4, 1986 * * *· should be rescinded * * *.

Petitioners requested a stay of the rescission alleging they were denied due process because no hearing was provided. The Board granted a stay, held a hearing, and reaffirmed its cancellation of the permit transfer.

The Board concluded, *inter alia*, that it would not have authorized the transfer if the joint petition had disclosed that Dawson and Kloster were owners of transferee; that Minn.Stat. § 221.151 prohibits the transfer of authority to a corporation or a person who already has authority issued by the Board; that M.V. Fritz Trucking, Inc. was formed to circumvent Minn.Stat. § 221.151 by achieving the transfer of authority by not disclosing the true owners of M.V. Fritz Trucking, Inc.; and that the Board's published notice of transfer did not adequately apprise potential competitors of the principals behind the request for transfer of authority because of misinformation supplied by the applicants.

## ISSUES

1. Did the Board correctly interpret Minn.Stat. § 221.151 to forbid a permit transfer to a corporation when its shareholders also wholly owned and controlled a corporation with a permit?

2. Was the Board's determination that the joint petition contained a "material misrepresentation" supported by substantial evidence?

3. Were the joint petitioners denied due process?

4. Should the Board be estopped from canceling the permit transfer? .

## DISCUSSION

1. Minn.Stat. § 221.151 (1986) states the conditions for the transfer of permits.

Subdivision 1. *Petition.* Permits * * issued under section 221.121 may be assigned or transferred but only upon the order of the board approving the transfer or assignment after notice and hearing.

The proposed seller and buyer * * * of a permit * * * shall file a joint notarized petition with the board setting forth the name and address of the parties, the identifying number of the permit, and the description of the authority which the parties seek to sell * * *, a short statement of the reasons for the proposed sale * * *, a statement of outstanding claims of creditors which are directly attributable to the operation to be conducted under the permit, a copy of the contract of sale * * *, and a financial statement with a balance sheet and an income statement, if existent, of the buyer * *. If it appears to the board, after notice to interested parties and a hearing, from the contents of the petition, from the evidence produced at the hearing, and from the department's records, files, and investigation that the approval of the sale or lease of the permit will not adversely affect the rights of the users of the service and will not have an adverse effect upon other competing carriers, the board may make an order granting the sale * * *. *Provided, however, that the board shall make no order granting the sale * * * of a permit to a person or corporation or association which holds a certificate or permit other than local cartage carrier permit from the board * * *.*

Minn.Stat. § 221.151, subd. 1 (1986) (emphasis added). The statutory language does not expressly prohibit an individual from having an interest in more than a single permit-holding corporation. The Board, however, interprets the statute to forbid not only an individual or corporation from holding two or more permits but also to prevent an individual from utilizing separate corporations, nominally independent

and distinct, in order to control two or more permits.

Dawson and Kloster owned 100% of the stock in a corporation with a permit. They formed a second corporation, in which they also held 100% of the stock, for the purpose of holding a second permit. The Board attributed the permits of Dawson and Kloster's corporations directly to the two shareholders to prevent the partners' effective control of more than one permit. The petitioners argue that the corporations are managed by separate independent officers and the Board cannot ignore a legitimate corporate form in order to attribute ownership to the shareholders.

■ The scope of judicial review for agency decisions is provided by Minn.Stat. § 14.69 (1986). The court may reverse if the petitioners' substantial rights may have been prejudiced by error of law. Minn. Stat. § 14.69(d). Although administrative agency decisions are presumed to be correct and typically are accorded deference by the judiciary, deference does not automatically extend to an agency's interpretation of a statute or case law. *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 470 (Minn.Ct.App.1984). "It is the function of the court in reviewing administrative agency decisions to settle questions of law." *Id.* Statutory interpretation is the province of the judiciary.

> [O]n matters of statutory interpretation, this court is not bound by the determination of an administrative agency. The manner in which the agency has construed a statute may be entitled to some weight, however, where (1) the statutory language is technical in nature, and (2) the agency's interpretation is one of long-standing application.

*Arvig Telephone Co. v. Northwestern Bell Telephone Co.*, 270 N.W.2d 111, 114 (Minn. 1978).

■ Here, the statute contains non-technical language, and there is no evidence that the Board's interpretation is long-standing. Therefore, this court must interpret the statute.

While Minn.Stat. § 221.151, subd. 1, does not explicitly prevent an individual from owning more than one permit-holding corporation, the Board finds legislative intent against such ownership to be manifest in subdivision 2. Subdivision 2 permits permit transfers between immediate family members to be done informally without a hearing. However, it prevents family members from holding or receiving a permit if he/she

> holds any other permit or certificate under this chapter either as an individual or in partnership or as owner of an interest in a corporation holding a permit or a certificate under this chapter.

Minn.Stat. § 221.151, subd. 2 (1986).

If subdivisions (1) and (2) cannot be harmonized, the result is discrimination without a rational basis against family permit transfers. The legislature could not have intended such a discriminatory regulatory scheme.

■ We believe the Board correctly harmonized the statute by attributing the common carrier permit to the shareholders, Dawson and Kloster, rather than the corporation, by reading Minn.Stat. § 221.151, subdivision 2 into subdivision 1. Subdivision 1 allows the Board to approve permit sales if after an investigation it is determined that the transfer will not "adversely affect" consumers or competing carriers. The section prevents a permit transfer to another "person or corporation or association" holding a permit. There is an express limitation of one permit to one person and one permit to one corporation. To hold otherwise would permit Dawson and Kloster to control two permits, and would adversely affect all other competing family and other individual carriers who are restricted by both subdivisions 1 and 2 from controlling more than one permit. Control of more than one permit could lead to control of prices, quantity or quality of service, or the nature of the competition between the remaining permit holders. The Board correctly ignored form and concentrated on substance by focusing on the individuals who effectively control permits.

2. The Board's factual findings are evaluated under the substantial evidence

standard. Minn.Stat. § 14.69(e); *Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co.*, 288 Minn. 294, 180 N.W.2d 175 (1970). Substantial evidence means:

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Taylor v. Beltrami Electric Cooperative, Inc.*, 319 N.W.2d 52, 56 (Minn.1982) (citation omitted).

The Board, in its November 26, 1986 order denying reconsideration determined that the joint petitioners made a material misrepresentation in its initial petition when it listed M.V. Fritz Trucking's officers on the petition instead of the corporation's shareholders. The joint petitioners also stated that the transferee had no present permit authority in Minnesota and that the transferee was not a "stockholder or partner in other permit or certificate." The joint petitioners, however, consistent with the application, defined "transferee" as the corporation rather than its two shareholders. The Board interpreted the joint petitioners' answers as a ruse to avoid the limitations on permit transfers.

Although the petition form is too ambiguous to clearly obtain information necessary for the Board's decision, the joint petitioners would have had knowledge of the statutory scheme to understand the import of the questions. The form asked for the officers' names, not the stockholders; there were also questions on the "trans-feree's present authority" as well as the inquiry, "please list if stockholder or partner in other permit or certificate." It was disingenuous for the joint petitioners to treat the corporation as an entity independent of its only two shareholders. In an area dominated by closely-held corporations, the relators certainly understand that the intent of the petition form and the statutes is to limit individuals' ownership and control of permits, through any device.

■ The Board also points out that the joint petitioners' counsel has previously practiced before the Board and should be aware of the nature of the petition form. The Board's findings appear to meet the substantial evidence test. The findings are not manifestly unjust.

■ 3. The due process issue appears moot because the joint petitioners received a hearing after their petition for reconsideration pointed out this procedural failing. In any case, under Minn.Stat. § 174A.02, subd. 4 (1986), the Board "may grant or deny the request of the petition 30 days after notice of the filing has been fully given." The granting of the petition was proper without a hearing and it seems logical that the board might rescind the permit if it was initially granted due to a mistake, without a hearing.

Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it.

*Anchor Casualty Co. v. Bongards Co-operative Creamery Association*, 253 Minn. 101, 106, 91 N.W.2d 122, 126 (1958).

■ 4. Petitioners claim that once they received the permit they acted in reliance upon it and will suffer harm if it is rescinded. The Board determined that the joint petitioners made a material misrepresentation. There is no possibility of estoppel. One must do equity to receive equity.

## DECISION

Pursuant to statute, the Transportation Regulation Board may prevent the transfer

of a common carrier permit to a corporation which is owned or effectively controlled, by an individual or corporation with a pre-existing interest in another common carrier permit. The Board's finding that the joint petitioners made a material misrepresentation was supported by substantial evidence.

Affirmed.